[Crim. No. 23356. Second Dist., Div. Four. Dec. 18, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY JEROME MacDONALD et al., Defendants and Appellants.

**COUNSEL**

Richard E. Eldred and J. Michael Flanagan, under appointments by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Lawrence P. Scherb II, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FILES, P. J.**—The single issue in this case is whether the right to a speedy trial was violated by allowing the defendants to remain in custody in Maryland until they made a request for disposition of California charges pursuant to Penal Code section 1389. The procedural setting in which the issue arises will be stated first.

On May 22, 1970, the grand jury presented an indictment charging the defendant MacDonald, the defendant Williams and Angelo Tender (who is not a party to this appeal) with several armed robberies (Pen. Code, § 211), burglaries (Pen. Code, § 459) and kidnapings for robbery (Pen. Code, § 209). Williams was charged in 12 counts and MacDonald in 3. The indictment alleged that the offenses were committed on specified dates in December 1964 and February and March 1965 and that the defendants had left California during or before August 1965 and had been in the custody of Maryland authorities from August 1965 to the date of the indictment.

The three defendants were brought to California for the purpose of prosecution shortly before their arraignment in the superior court on May 25, 1970. Defendants then demurred to the indictment and moved to

dismiss upon the ground that they had been denied their right to a speedy trial. Eventually there was a hearing, at which evidence was received, following which, on August 7, 1970, the superior court made findings of fact and then denied the motion and overruled the demurrer.

On April 19, 1971, each of the three defendants pleaded guilty to count X of the indictment, which charged an armed robbery on March 15, 1965. This plea was made pursuant to an understanding that the degree of the robbery would be second degree, that all other counts would be dismissed, that the sentences would run concurrently with the Maryland terms, and that defendants would then be returned to the Maryland prison.

Pursuant to Penal Code section 1237.5 the superior court granted leave for defendants to appeal from the judgment which followed that plea.

While that appeal was pending, the United States Supreme Court handed down its opinion in *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182], discussing the criteria by which the speedy trial right is to be judged. A majority decision of the California Court of Appeal decided (*People* v. *MacDonald* (1972) 27 Cal.App.3d 508 [103 Cal.Rptr. 726]) that this case should be remanded to the superior court for a further evidentiary hearing, so that findings could be made in the light of the Supreme Court's criteria. One justice of the Court of Appeal dissented, his opinion being that the existing record showed that defendants' right to a speedy trial had been violated and they were then entitled to a dismissal.

Pursuant to the order of remand, a further hearing was held in the superior court in December 1972 and January 1973, with respect to the defendants MacDonald and Williams only. It was reported that Tender had escaped from the Maryland prison. Following the hearing the court made additional findings, and concluded that defendants had not been prejudiced by the delay, and that their right to a speedy trial had not been violated. Defendants' motions to vacate the judgment were denied. The defendants MacDonald and Williams are appealing from that order.

The superior court treated the hearing on remand as a continuation of the 1970 hearing, giving consideration to the evidence received at both hearings. For the purpose of this appeal, we therefore consider the record of the first appeal as a part of the case now before us. The record of the 1970 hearing consists of documentary evidence and the oral testimony of the three defendants and one prison official from Maryland. The only additional evidence received after the remand was some further testimony by the two defendants.

The findings made in 1970 detail how the California authorities pro-

ceeded under the interstate agreement on detainers, to which both California and Maryland are parties, and which is set forth in Penal Code section 1389.[1]

The 1970 findings include the following:

In August, September and October 1965 police in Redondo Beach, Glendale and Alhambra, California, forwarded felony warrants to Maryland to be placed as detainers against defendants, who were then in custody there. On February 10, 1966, defendants were received at the Maryland State Penitentiary. On March 9, 1966, a Maryland prison official informed each of the defendants of the California detainers. On the same day each defendant signed a writing acknowledging that he had received a written notice of the detainers, called "Agreement on Detainers: Form 1," which advised him: (a) he had a right to request final disposition of the complaints against him; (b) within 180 days after he made written demand he would be brought to trial; and (c) he was to notify the warden if he desired to request disposition. Each defendant was also advised that any further action regarding the detainers would have to be initiated by him.

On December 9, 1969, MacDonald signed a request for final disposition, and on February 3, 1970, Williams signed such a request.

With respect to each defendant the court also found "The program of rehabilitation of the defendant . . . instituted by the Maryland State Penitentiary has been interfered with by the fact that Los Angeles County has obtained temporary custody of the defendant, and that the existence of a detainer since 1965 had an effect on the custody and the type of rehabilitative program available for the defendant."

---

[1]Pertinent portions of the interstate agreement (Pen. Code, § 1389 and Md. Code (1971 Repl. Vol.) art. 27, § 616A-616R) include the following: "Article III, subdivision (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: . . . .

" . . . . . . . . . .

"Article IV, subdivision (a) The appropriate officer of the jurisdiction in which an untried indictment, information or complant is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: . . . ."

The findings made by the trial court in 1973 include the following: "The Court finds that the reason for the delay, the second factor discussed in Barker versus Wingo, was the reliance of the California authorities upon section 1389 of the Penal Code to eventually result in the return of the defendants from the Maryland Penitentiary.

"       .     .     .     .     .     .     .     .     .     .     .     .     .

"But the failure to expedite on the part of the California authorities was apparently as a result of a combination of negligence and a concern over the extent and difficulty involved in extradition.

"       .     .     .     .     .     .     .     .     .     .     .     .     .

"The Court finds that each defendant understood the provisions under the agreement on detainers Form 1; and further understood those robbery charges pending against him in California.

"The Court realizes that a defendant can entertain the hope that memories of prosecution witnesses will fade or that prosecution witnesses will disappear.

"       .     .     .     .     .     .     .     .     .     .     .     .     .

"The Court finds that the defendants were in those circumstances willing to and did wait until almost five years had gone by before they asserted the right to a speedy trial.

"       .     .     .     .     .     .     .     .     .     .     .     .     .

"The Court finds that neither of the defendants asserted the right until informed—until having been informed—that a Maryland parole was not possible without the California detainers having been taken care of or released."

The court also found that neither defendant had been prejudiced by the delay. In support of that finding, the court pointed out there was no evidence that the incarceration in Maryland was any more oppressive than it would have been in California, and there was no evidence that either defendant would have attained rehabilitation under any other system of confinement.

The court also observed that there was no testimony "concerning any great anxiety or concern on the part of the defendants." Rather, the court said, it appeared the defendants were content to wait in Maryland until they learned that the California detainers "set in the way of the Maryland parole."

The record shows that following the May 25, 1970, arraignment of the defendants on the indictment in Los Angeles Superior Court, several postponements of the proceedings were consented to by defendants, under the guidance of counsel, and are therefore not material to this appeal. The period of delay which is critical to the decision here is the period from February 10, 1966, when the defendants were received at the Maryland penitentiary, until May 25, 1970, when they were arraigned in Los Angeles.

*The Dual Constitutional Rights to Speedy Trial.*

The California Constitution, article I, section 13, declares that the party accused shall have the right to a speedy trial. The state policy has been restated by the Legislature in Penal Code sections 686 and 1050.[2] The federal constitutional right to a speedy trial contained in the Sixth Amendment was first made applicable to the states by *Klopfer* v. *North Carolina* (1967) 386 U.S. 213 [18 L.Ed.2d 1, 87 S.Ct. 988]. A line of California cases, decided both before and after *Klopfer,* has established guidelines for implementing the right to a speedy trial under the California Constitution. Since the two Constitutions do not necessarily impose the same standard (see *Sykes* v. *Superior Court* (1973) 9 Cal.3d 83 [106 Cal.Rptr. 786, 507 P.2d 90]) it is necessary to discuss the state and federal cases separately.

Before doing so we point out that, although counsel have argued the question of waiver, we do not reach that issue. If the defendants waived their constitutional rights to speedy trial, there would be no need to determine whether the delay exceeded constitutional limits. The trial court did not find a waiver, though it expressly found some of the facts which are ingredients of waiver. One factual matter not covered by the trial court's findings was whether or not the defendants acted "intelligently and understandably." (See *Barker* v. *Wingo, supra,* 407 U.S. at pp. 525-526 [33 L.Ed.2d at pp. 113-114].) Since we have concluded that neither the state nor federal Constitution was violated by the delay under the circumstances of this case, it is not necessary to determine whether the record would support or compel a finding of waiver.

*The Balancing Test of* Barker *v.* Wingo.

In *Barker* v. *Wingo, supra,* 407 U.S. 514, the court dealt with a delay between arrest and trial amounting to more than five years, resulting

---

[2]Penal Code section 1050: "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time, and it shall be the duty of all courts and judicial officers and of all prosecuting attorneys to expedite such proceedings to the greatest degree that is consistent with the ends of justice. . . ."

from a number of circumstances, which did not include the defendant's absence. The court concluded it would accept "a balancing test" which "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." The four factors to be weighed are "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (407 U.S. at p. 530 [33 L.Ed.2d at pp. 116-117].)

We therefore proceed with an analysis of the record before us within that framework.

(a) *Length of delay.*

We assume that each of the defendants became an "accused" within the meaning of the Sixth Amendment when complaints were filed and warrants were issued for their arrests in 1965. (See *Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 739 [91 Cal.Rptr. 578, 478 P.2d 10].) Defendants were not available for trial in California while they were in Maryland custody until February 10, 1966, when they commenced their terms of imprisonment there. Upon that date they became available to California under the interstate compact upon request by an "appropriate officer." The critical period is between that date and May 25, 1970, when they were first arraigned before a California court.

No specific California statute required the prosecution to act prior to the time that MacDonald's December 9, 1969, demand started running the 180-day period specified in section 1389. The statute of limitations for filing an information on the burglary and robbery counts was three years from the commission of the offenses (Pen. Code, § 800) but such time did not run while defendants were outside California (Pen. Code, § 802). The prosecution was therefore well within the California statutory standards.

The period between the time defendants first became available and their arraignment in California is a little more than four years—a substantial period, but less than the time in *Barker* v. *Wingo.*

(b) *The reason for the delay.*

The trial court found the reason to be the reliance of California authorities on section 1389. The trial court also found that "the failure to expedite on the part of the California authorities was apparently as a result of a combination of negligence and a concern over the extent and difficulty involved in extradition."

The record of the two hearings is entirely silent as to why California authorities did not seek to extradite defendants before they made their demands under article III of the interstate agreement. Article IV of that agreement provides that "the appropriate officer" of the jurisdiction in

which the untried complaint is pending is entitled to have the prisoner made available upon written request to the state in which the prisoner is incarcerated. No law enforcement officer or prosecutor was called as a witness to testify as to why "the appropriate officer" of California had not invoked article IV to obtain the presence of these defendants.[3] The trial court's finding therefore appears to be no more than a supposition.

The record adequately supports the findings that defendants were advised in March 1966 that they were entitled to a disposition of the charges if they demanded it, and that they were willing to wait. Defendants testified they lacked such understanding, but the oral testimony of the Maryland official and the documentary evidence is against them. It is also pertinent that both defendants decided to seek a disposition of the California charges after they learned they would not be considered for parole in Maryland until they had done so. Thus the trial court was entitled to conclude that each defendant's appraisal of his own interest was one of the causes of the delay.

(c) *Defendants' assertion of the right.*

It is clear that after defendants asked for a trial, California proceeded promptly, and such delay as occurred thereafter was with the informed consent of both defendants.

(d) *Prejudice to the defendants.*

The kind of prejudice most commonly asserted—that is, impairment of the defense—is nonexistent in this case. At the time defendants offered to change their plea to guilty to one count of second degree burglary, the court asked defendants to tell what they had done. Defendant MacDonald then told how he and Williams had entered a store in Glendale at 8 or 9 o'clock in the morning and, at gunpoint, taken people to the safe, seized the money and carried it out in a suitcase to an automobile where their codefendant Tender was waiting. Defendant Williams stated that he had participated.

By this judicial confession the defendants established that they had no

---

[3]Defendants call attention to a letter dated October 11, 1965, on the letterhead of the Police Department of the City of Alhambra, addressed to "Baltimore County Police Hqs." and signed by "G. Luciano, Detective Division," and transmitting two copies of warrants. The text of the letter contains the statement "We realize that there is a possibility that many years will pass (we hope) until the state of California is able to extradite Mr. Tender and Mr. Williams."

There is no evidence which would indicate that the hope of the writer had anything to do with the decision as to whether California would ask for the delivery of Williams and MacDonald for trial. The Alhambra charges were dismissed after defendants pleaded guilty to the Glendale robbery.

defense and that any disappearance of witnesses or fading of memories due to lapse of time could have harmed only the prosecution. With the clear vision of hindsight, we can be confident that the integrity of the court's fact finding process was not impaired by delay.

Several other possible items of delay-prejudice are recognized in the case law, and are adverted to by defendants' counsel here, but the record does not establish that defendants actually suffered such prejudice.

*Barker* v. *Wingo, supra,* 407 U.S. at page 532 [33 L.Ed.2d at page 118], points out that one interest served by a speedy trial is to prevent oppressive pretrial incarceration. But these defendants were incarcerated for another reason during all of the period between charge and disposition of the California offense. There is no evidence which would support a finding that the incarceration would have been less oppressive had defendants been tried and convicted in California in 1966 and returned to Maryland to complete their terms there.[4]

Another interest mentioned in *Barker* is "to minimize anxiety and concern of the accused." Here it is established that both defendants knew they could have a trial in California when they wanted it, but they did not want it until they found the detainer might delay their Maryland parole. Whether the defendants' willingness to wait was an informed and intelligent decision is a different matter, which would be pertinent only if the issue were waiver. The point here is that the trial court was reasonable in concluding from the evidence that, until defendants made demand, they preferred (intelligently or not) to stay where they were, thus suffering no anxiety over the delay.

Another item of prejudice which may sometimes result from delay is the loss of concurrency of sentences. Here the record shows that each of the defendants had been sentenced to a term of 18 years in Maryland. The California sentence imposed on each was an indeterminate term of one year to life (Pen. Code, §§ 213, 671), to run concurrently with the Maryland sentence. This California term must have commenced to run shortly after sentence was pronounced on April 19, 1971. When defendants were back before the court in 1972 for a further hearing on the speedy trial issue, they already had served more than the minimum required by California. If their California terms, as finally fixed by the Adult Authority, extend beyond the Maryland terms, that will be because the Adult Authority has, with knowledge of the circumstances, determined that justice requires it.

---

[4]The Maryland prison records, which are in evidence, show that each of the defendants served some time in "segregation" for specific violations of prison rules, but during other times each was assigned to the print shop.

(Pen. Code, § 3020.) There is no evidence in the record, nor are there any facts of which we have judicial notice, by which to determine whether either defendant would have served any shorter period of imprisonment had he been tried and convicted in California in 1966 rather than 1970.[5]

Putting together the four factors, we come to this:

The first factor—length of delay—is substantial, but not by itself controlling. The delay held not to be a violation in *Barker* was longer.

The second factor—reason for the delay—is neutral. Either the prosecution or the defendants could have compelled an earlier trial.

The third factor—the defendants' assertion of their rights—is squarely against the defendants. They were brought to trial when they asked for it.

The fourth factor—prejudice—is also against them. The trial court found no prejudice, and the record makes that finding a reasonable one.

The balance is strongly adverse to defendants. The trial court reasonably concluded there was no violation of the Sixth Amendment to the federal Constitution.

*The California Constitutional Law.*

█ Although there are no pertinent authorities in California under the interstate compact, which is in Penal Code section 1389, an analogy is found in the cases applying Penal Code section 1381, which governs the right of a California prisoner to demand trial of charges pending within the state.

In *People* v. *Godlewski* (1943) 22 Cal.2d 677 [140 P.2d 381], a felony complaint was filed against Godlewski and Taranski on April 2, 1941. Two weeks later both men were sentenced to state prison in California on an unrelated offense. On August 15, 1941, an order was filed with the warden to "hold" Godlewski on account of the pending charge. On November 3, 1941, Godlewski demanded a trial on the complaint in accordance with Penal Code section 1381 which provided (as it does now) that a California prisoner must be tried within 90 days of his demand. No trial was had within 90 days, and the complaint was dismissed. Thereafter, a new complaint was filed and on April 21, 1942, both defendants were charged by information with the offenses set forth in the first complaint. Both defendants were brought to trial and convicted.

The Supreme Court affirmed both convictions. As to Godlewski, the

---

[5]Communications from the defendants to this court indicate that each has been in a California prison since 1972.

court held that the refiling did not violate section 1381, and that the delay did not violate his constitutional right.

As to Taranski, the court pointed out that the arrest warrant had not been served on him and he had never made a demand under section 1381. The court said (at p. 684): "It may be that he is entitled to invoke the constitutional provision independently of any statute [citation], but as we have seen, he falls squarely within the provisions of section 1381, relating to the trial of defendants confined in a state prison. He made no demand as there required. We find nothing unreasonable in the requirement for a demand. It does not abrogate the constitutional guarantee. It is merely regulatory of it. Persons already incarcerated in prison will not suffer imprisonment during delay."

The *Godlewski* case has since been construed as establishing the law that a California prisoner's constitutional and statutory rights to a speedy trial on another felony charge are governed by Penal Code section 1381. If the prisoner has been notified of the charge, he may not gain immunity by reason of delay in prosecution unless he has made a written demand as provided in that section. (*People* v. *Jacobs* (1972) 27 Cal.App.3d 246, 256 [103 Cal.Rptr. 536]; *People* v. *Robinson* (1968) 266 Cal.App.2d 261, 264 [72 Cal.Rptr. 33]; *People* v. *Hernandez* (1967) 250 Cal.App.2d 842, 848 [58 Cal.Rptr. 835]; *People* v. *Goss* (1961) 193 Cal.App.2d 720, 725 [14 Cal.Rptr. 569];[6] *People* v. *Aguirre* (1960) 181 Cal.App.2d 577, 581 [5 Cal.Rptr. 477]; *People* v. *Ragsdale* (1960) 177 Cal.App.2d 676, 678 [2 Cal.Rptr. 640]; *Osmulski* v. *Superior Court* (1959) 169 Cal.App.2d 444, 445 [337 P.2d 520]; see *In re Mugica* (1968) 69 Cal.2d 516 [72 Cal.Rptr. 645, 446 P.2d 525]; Witkin, Cal. Criminal Procedure (1963) § 314, p. 308.)

One more consideration deserves mention. The American Bar Association Project on Standards for Criminal Justice, Speedy Trial (Approved Draft 1968) contains standard 3.1 pertaining to "a person serving a term of imprisonment." In substance, it would require that the prisoner be notified of the charges and that he be given a trial promptly upon his demand. The standards omit any duty upon the prosecutor to undertake to obtain the presence of the prisoner in the absence of a demand.

The commentary accompanying this standard discusses some of the conflicting views of courts and legal writers on this subject, and then announces this conclusion: "In view of the fact that the standard does require notice

---

[6]Disapproved on another point in *In re Martinez* (1970) 1 Cal.3d 641, 647, footnote 5 [83 Cal.Rptr. 382, 463 P.2d 734].

to the prisoner of the charges and does establish a procedure for making demand, it is appropriate to limit the prosecutor's responsibility for proceedings to those cases in which a demand is made. Absent a desire by the prosecutor to go to trial, the prisoner then retains the option of demanding trial in order to overcome whatever disadvantages may flow from the fact a detainer has been lodged against him or of not making the demand in the hope that the charges will be dropped before or at the time he completes his sentence." ABA Project, *supra,* pages 37-38.

Defendants have constructed a plausible argument from language used by our Supreme Court in cases which do not involve a prisoner whose right to demand a trial is spelled out by statute. In *Harris* v. *Municipal Court* (1930) 209 Cal. 55, 61 [285 P. 699], the court pointed out that the Penal Code made it the duty of the state to expedite proceedings in criminal cases. The court also declared (at p. 64) that where the delay was unreasonable (in that case almost 19 months) prejudice would be presumed. The language of *Harris* was quoted in *Barker* v. *Municipal Court* (1966) 64 Cal.2d 806 at page 814 [51 Cal.Rptr. 921, 415 P.2d 809] with the word "duty" italicized. That opinion goes on to say at page 815: "The duty imposed upon prosecuting officers by article I, section 13, of the Constitution and Penal Code, section 1050, embraces an obligation to employ all means reasonably available to bring an accused promptly to trial."

Although the court there was dealing with prisoners who had demanded a trial, the emphasis on the duty of the prosecutor seems to go beyond that special situation.

In *Jones* v. *Superior Court, supra,* 3 Cal.3d 734, involving a local resident whose arrest came 19 months after the complaint was filed, the Supreme Court invoked the principles discussed in *Harris* and *Barker,* and ordered the prosecution dismissed on constitutional grounds. The opinion points out that (1) the constitutional guarantee is self-executing, so that no specific statutory time limit is necessary for its implementation; (2) the statute of limitations imposes an outside limit on prosecutions, but does not operate to justify delay within the statutory period; (3) the defendant became an "accused" in the constitutional sense not later than the time the complaint was filed; (4) the period of delay advanced no proper police purpose, and was therefore unreasonable; (5) the delay prejudiced defendant in the preparation of his defense; and (6) although defendant knew the police suspected him, he was under no obligation to come forward, and his failure to do so cannot justify the delay.

In *Hayes* v. *Superior Court* (1971) 6 Cal.3d 216 [98 Cal.Rptr. 449, 490

P.2d 1137], the court pointed out the important reasons for requiring prompt disposition of detainers against prisoners.

Again in *Sykes* v. *Superior Court, supra,* 9 Cal.3d 83, the Supreme Court cited and followed the cases which impose a duty upon the prosecutor to act promptly, and ordered a dismissal because there had been a delay for which the prosecutor failed to show good cause.

Relying upon this line of cases, from *Harris* v. *Municipal Court* through *Sykes* v. *Superior Court,* defendants argue that the state is under an obligation to employ all means reasonably available to bring an accused promptly to trial, even though there is no specific statutory time limit; that the state did have a means for bringing defendants to trial four years earlier than it did; that the prosecution has failed to show any reason for waiting; and that prejudice is presumed from the delay. Though there is language in the cited cases supporting all of the steps in that argument, it is not applicable in this case. The line of cases from *Godlewski* on, in construing Penal Code section 1381, provide an analogy which is controlling here. The recently adopted American Bar Association Standard, cited *supra,* confirms the view that this long standing rule is sound.

The order denying the motions to vacate the judgments and dismiss the proceeding is affirmed.

Kingsley, J., and Dunn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 14, 1974.