[Crim. No. 19762. First Dist., Div. Four. July 28, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES HOWELL POSTEN, Defendant and Appellant.

COUNSEL

Robert F. Kane, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Ronald E. Niver and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

POCHÉ, J.—The appellant in this case was convicted by a jury of kidnap with intent to commit robbery and robbery, three counts of false imprisonment, and the unlawful driving and taking of a vehicle. He was sentenced to life imprisonment for kidnaping with intent to commit robbery, sentencing on the other counts to run concurrently.

On February 20, 1972, Ted Faravelli was confronted at the door of his home by two men wearing stocking masks, one of whom held his family hostage, while the other forced him at gunpoint to Faravelli's restaurant where he was forced to give appellant $7,000 in cash from

the restaurant safe. During the drive to the restaurant, appellant removed the stocking mask, and Faravelli was able to observe appellant at close range for a period of at least 45 minutes, including a 10 to 15 minute period at the restaurant when the two had coffee sitting across a small table. Appellant returned Faravelli to his home, and appellant and his partner escaped in Faravelli's car.

Appellant's partner was arrested, convicted and sentenced to prison in 1972.

On October 16, 1973, appellant was incarcerated in the Virginia State Penitentiary and on that date he acknowledged receipt of agreement on detainers form I entitled "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition," informing him of the above charges. (See Pen. Code, § 1389, interstate agreement on detainers.) On this form, appellant's name was typed by Virginia authorities as "James Howell Posten a/k/a George Milton McKee," and appellant signed the form "James H. Posten" and immediately below that "G. McKee."

On September 20, 1977, appellant executed a prepared agreement on detainers form II entitled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints." In the space for the inmate's name and number the Virginia authorities had typed only "George McKee," and on the reverse side where the inmate's signature is called for appellant signed his name "George McKee."

Thereafter, the authorities at the Virginia State Penitentiary completed the remaining forms and forwarded them to the Santa Clara County District Attorney. The packet contained a newly prepared form I from which was deleted the reference to "James Howell Posten" contained in the original form I, and showing only the name "George McKee." This form was signed by appellant on September 27, 1977.

The packet of forms was received by the Santa Clara District Attorney on October 4, 1977. The matter was handled by Deputy District Attorney Thomas Hanford, the deputy in charge of extraditions. The district attorney's office, however, was unable to find a file under the name "George McKee" in either their office or through the computerized CJIC System. On October 20, 1977, Hanford wrote to the Virginia State Penitentiary requesting further identifying information.

Hanford testified that he was unable to recall how or when he first became aware that "George McKee" was "James Howell Posten," but an internal district attorney's office memorandum requesting investigation showed that by November 10, 1977, the connection had been made. On December 1, 1977, Mr. Hanford notified Virginia by use of the agreement on detainers form VII of his intention to accept temporary custody of appellant on January 5, 1978.

On January 5, 1978, Robert Mann and Duane Sands, investigators for the Santa Clara County District Attorney's office arrived at the Virginia State Penitentiary to take appellant into custody and fly him to California. Appellant, however, informed Mr. Mann that he had a fear of flying and would not fly. Mr. Mann contacted the district attorney's office in Santa Clara and was instructed to attempt to put appellant on the airplane. Appellant subsequently created such a commotion at the airport that the airport authorities would not permit Mr. Mann to place him on the airplane. The Santa Clara District Attorney's office ordered the investigators to return to California, pending arrangement of alternative transportation.

On January 23, 1978, Mr. Mann and John Zowin of the Mountain View Police Department went to Virginia. They transported appellant by car to Washington, D.C. and by train to Oakland, arriving on January 27, 1978, at the Santa Clara County jail.

Appellant was arraigned in the Palo Alto Municipal Court on January 30, 1978, and his deputy public defender requested a continuance for investigation, time being waived until February 14, 1978. On February 14, 1978, the time set for the preliminary hearing, appellant was not brought to court, but was instead taken to a line-up and exhibited to witnesses without his counsel's presence.

On February 15, 1978, appellant appeared in court, the deputy public defender declared a conflict of interest, private counsel was appointed, and time was further waived for two days until February 17, 1978. On February 17, counsel appeared and requested a prompt setting of a preliminary hearing; time was specifically not waived. At the preliminary examination, appellant was held to answer on all charges.

Pursuant to a motion to set aside the information under Penal Code section 995 based on the inadmissibility of the in-court identification, the superior court dismissed the charges against appellant on March 30,

1978. On April 4, 1978, the prosecution filed a notice of appeal. Appellant remained in custody in California pending disposition of the People's appeal. The prosecution failed to promptly pursue its appeal, resulting in dismissal of the appeal on June 5, 1978. Rehearing was granted on June 28, 1978, and on November 16, 1978, this court in an unpublished opinion reversed the superior court's dismissal. The remittitur was filed on January 17, 1979.

On February 9, 1979, appellant's motion to dismiss on grounds that he was denied a speedy trial was denied, and trial was set for February 13, 1979. On February 13, appellant was granted a continuance to petition this court to review the denial of his motion. This court summarily denied the writ. A petition for hearing was filed with the Supreme Court on March 14, 1979, and a temporary stay was granted. The Supreme Court, however, refused to grant a hearing.

Trial of this matter commenced on April 12, 1979.

*180-Day Limitation of the Interstate Agreement on Detainers*

■ Appellant contends that dismissal in this case is mandated by Penal Code section 1389, California's enactment of the interstate agreement on detainers (hereinafter Agreement) insofar as appellant was brought to trial more than 180 days after his request[1] for disposition of the charges pending against him in California. (Pen. Code, § 1389, art. III, subd. (a), art. V, subd. (c).) The Agreement has been adopted by 45 states and the federal government (West Annot. Pen. Code, § 1389 (1980 pocket supp.)), in an effort to provide for the orderly and expeditious disposition of untried charges lodged against a person incarcerated in another state. (Pen. Code, § 1389, art. I.)

The Agreement provides that disposition may be initiated either by request of the appropriate officer of the state where the charges are

---

[1]Appellant cites *People* v. *Wilson* (1977) 69 Cal.App.3d 631 [138 Cal.Rptr. 259], as authority for his assertion that the 180-day limitation runs from the date of appellant's request and not from the date of receipt by the state. On the contrary, we read *People* v. *Wilson, supra,* to stand for the proposition that the 180 days commences upon receipt by the receiving state, any delay between request and receipt to be determined by a reasonableness standard. (*Id.,* at pp. 635-636.) Language in article III, subdivision (a) states that the statute runs when appellant "shall have caused to be delivered" such request, and is ambiguous in this regard. However, our disposition of this case does not require this determination insofar as we find that in this case neither request nor receipt commenced the running of the statute.

outstanding (Pen. Code, § 1389, art. IV), or by request of the prisoner (Pen. Code, § 1389, art. III). No request was made by the State of California for appellant's return.

When the request is made by the prisoner under article III, "he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." (Pen. Code, § 1389, art. III, subd. (a).)

Article VI, subdivision (a) of the Agreement provides that, "[i]n determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."

In the event the defendant is not brought to trial within the prescribed 180 days, the action must be dismissed with prejudice. (Pen. Code, § 1389, art. V, subd. (c).)

Appellant requested disposition on September 20, 1977, and trial in his case was not originally scheduled until February 13, 1979, clearly a period in excess of the 180-day maximum. Therefore, the question is whether the running of the 180-day statute was tolled during time in which appellant was unable to stand trial. The trial court found that the statute was tolled during four time periods:

1. The period from the date appellant requested trial in California to November 10, 1977, the date the district attorney discovered appellant's dual identity;

2. The period from January 5, 1978, to January 27, 1978, required to make alternative travel arrangements for appellant because of his refusal to board the airplane;

3. The period of time between January 30, 1978, to February 17, 1978, the time during which appellant expressly waived his rights to a speedy trial; and

4. The periods from April 4, 1978, to June 5, 1978, and June 28, 1978, to January 17, 1979, during which time the People's appeal of the dismissal was pending before the Court of Appeal.

Subtracting those time periods from the total elapsed time, appellant was brought to trial within the prescribed 180-day period.

It is appellant's contention that all of the time should be counted save the time expressly waived. We thus address each of the tolling periods.

Neither the request for disposition by appellant, nor its receipt by the district attorney, commenced the running of the statute in this case. The Agreement is designed to protect the defendant who desires the expeditious disposition of charges pending against him. It places upon the defendant the affirmative obligation to request disposition. (*People* v. *Wilson, supra,* 69 Cal.App.3d 631, 636-637.) In this case, James Posten did not request disposition on September 20, 1977. George McKee requested disposition. The Santa Clara District Attorney's office had no outstanding charges against George McKee. Although it is true that clerical errors made by either the sending or receiving state authorities will not toll the statute (*People* v. *Wilson, supra,* at p. 637; *Chauncey* v. *Second Jud. Dist. Ct., Washoe Cty., Reno, Nev.* (9th Cir. 1973) 474 F.2d 1238; *Pittman* v. *State* (Del. 1973) 301 A.2d 509), it is incumbent on the defendant to cooperate in the endeavor being undertaken at his request and for his benefit. Appellant in this case did not do so. He was in the best possible position to know his true name and the name under which the outstanding charges in California were filed. It was not unreasonable for the Virginia authorities to type in on the forms the name under which appellant was incarcerated at their facility. It *was* unreasonable for appellant to sign both forms I and II of the Agreement as George McKee without alerting the Virginia authorities as to his alias. Personal correspondence between appellant and this court is articulate and intelligent. We hold appellant to an obligation to cooperate reasonably in his own request, and find the 180-day time period did not begin to run until November 10, the date the district attorney discovered that James Howell Posten requested disposition of the charges pending against him.

The 22-day period required by the Santa Clara District Attorney's office to make alternative arrangements for the return of appellant to California is plainly tolled. The delay was caused solely by appellant and during such time appellant was unable to stand trial. Twenty-two days was not an unreasonable delay.

Finally, appellant was unable to stand trial during the time the People's appeal was pending. Appellant argues that the district attorney's office should have been required to avail itself of the continuance procedure provided for by Penal Code section 1389, article III, subdivision (a), or in the alternative, should have filed a new complaint and proceeded with a new preliminary hearing.

The continuance provided for by the statute is designed to cover the situation where the 180-day period is going to expire imminently, and the time period should be extended for good cause, e.g., unavailability of witnesses. (See *State* v. *Collins* (1976) 29 N.C.App. 478 [224 S.E.2d 647].) It is not applicable where the statute is tolled. If the statute is tolled, there is no need to request a continuance to prevent the expiration of the time period. Furthermore, as pointed out by the People, once the charges against appellant had been dismissed, in what proceeding would they request a continuance? There had been a dismissal of that proceeding.

Although *Anderson* v. *Superior Court* (1967) 66 Cal.2d 863 [59 Cal.Rptr. 426, 428 P.2d 290], cited by appellant, indicates that filing a new complaint would be an acceptable procedure in such case, it does not compel it. The district attorney's office had a right of appeal which they exercised. Because appellant was unable to stand trial while the appeal was pending, the period was tolled.

Appellant's case need not be dismissed for failure to comply with the 180-day limitation of the interstate agreement on detainers.

*Right to a Speedy Trial*

■ Appellant urges that it was incumbent upon the Santa Clara District Attorney's office to promptly extradite him under Penal Code section 1389, article IV, and that the four-year delay between the information filed against him and his request for disposition constituted a denial of his right to a speedy trial under both the United States and California Constitutions.

The standards under the two constitutional provisions are not the same. (*People* v. *Hannon* (1977) 19 Cal.3d 588 [138 Cal.Rptr. 885, 564 P.2d 1203]; *Sykes* v. *Superior Court* (1973) 9 Cal.3d 83 [106 Cal.Rptr. 786, 507 P.2d 90].)

*People* v. *MacDonald* (1973) 36 Cal.App.3d 103 [111 Cal.Rptr. 266], is directly on point, the issue here, as there, being whether the right to a speedy trial is violated by allowing a defendant to remain in custody until he makes the request for disposition of charges. In *MacDonald*, defendants waited almost five years to request disposition of the charges pending against them in California. Applying the four-point balancing test articulated by the United States Supreme Court in *Barker* v. *Wingo* (1972) 407 U.S. 514, 530 [33 L.Ed.2d 101, 116-117, 92 S.Ct. 2182]—length of delay, the reason for the delay, defendant's assertion of his right, and prejudice to the defendant—the court found the length of delay to be substantial, but not controlling, noting that the delay in *Barker* was longer. The court also noted that as the other applicable statutes of limitation governing defendant's crimes were tolled during the out-of-state incarceration, the prosecution was within the California statutory standards. The court further found the fact that neither party had earlier requested disposition to be a neutral one, as the defendants as well as the prosecution could have at any time initiated an earlier trial. In that case, as in the instant case, having once been apprised of defendants' assertion of their rights, the state acted promptly. (*People* v. *MacDonald, supra*, 36 Cal.App.3d at pp. 110-113.)

The only issue then presented here under the four-prong standard articulated in *Barker* v. *Wingo, supra*, 407 U.S. 514, is whether appellant suffered prejudice by virtue of the delay. Appellant claims prejudice in that his partner in crime was no longer in custody and was unavailable to the defense; the officer who arranged the photographic display had died 15 months prior to trial and was thus unavailable; appellant suffered anxiety as a result of the impending charges; the California detainer inhibited the rehabilitation program appellant was undergoing in Virginia.

There was no showing that the testimony of appellant's cohort would have been exculpatory of the appellant. All of the evidence indicates that appellant's partner would have been of no value to him as an impeaching witness. The offending photographic lineup was not admitted into evidence precisely because the photographs had not been preserved

and the officer was unavailable to testify. Appellant waited for four years to request disposition of his case, which is perhaps some evidence of the level of appellant's anxiety over the charges pending against him in California. Appellant fails to indicate in what way availing himself of the California facilities impeded his rehabilitation.

Appellant having failed in his showing of prejudice, we dispose of this case in accord with *People v. MacDonald, supra*, 36 Cal.App.3d 103, appellant not having been denied a speedy trial under the United States Constitution.

■ "The test under the California Constitution, as set forth in *People v. Godlewski* (1943) 22 Cal.2d 677...and the cases following it, is a demand test. If a prisoner has been notified of the lodging of another felony charge, he may not gain immunity by reason of delay in prosecution unless he has made a written demand as provided by Penal Code section 1381. By analogy, this would also be applicable to Penal Code section 1389." (*People v. Radil* (1977) 76 Cal.App.3d 702, 711-712 [142 Cal.Rptr. 233]; see *People v. MacDonald, supra*, 36 Cal.App.3d at p. 113.) Once the demand was made, trial was had in compliance with Penal Code section 1389.

*Kidnap with Intent to Commit Robbery*

■ Appellant contends that the evidence was insufficient to sustain his conviction of kidnap with intent to commit robbery on the premise that the trip to the restaurant was merely incidental to the robbery and did not substantially increase the risk of harm to Mr. Faravelli. (*In re Earley* (1975) 14 Cal.3d 122, 126-127 [120 Cal.Rptr. 881, 534 P.2d 721]; *People v. Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].)

In *People v. Thornton* (1974) 11 Cal.3d 738, 767-768 [114 Cal.Rptr. 467, 523 P.2d 267], the California Supreme Court found a distance of one to several blocks a location remote from initial contact, and not merely incidental to the crime of robbery. (Cf., another victim in the *Thornton* case where movement within a laundry room did not equal the necessary asportation under Pen. Code, § 209.) The five-mile distance in the instant case is substantial. As stated in *Thornton*, "any substantial asportation which involves forcible control of the robbery victim such as that occurring in this case exposes her to grave risks of harm to which she would not have been subject had the robbery oc-

curred at the point of initial contact." (*People* v. *Thornton, supra,* at p. 768; see also *In re Earley, supra,* 14 Cal.3d at p. 131.) Such was precisely the case here.

*Evidentiary Error*

Appellant has raised some issues with regard to allegedly improper admission into evidence of the in-court identification by Mr. Faravelli, incriminating statements made by appellant to police officers, and offers made by appellant to police officers to plead guilty.

About an hour and one-half after the crimes, Mr. Faravelli looked through a "mug" book and selected a photograph that he thought was appellant. The photographs were not preserved, and the investigating officer who had displayed them had died in the interim. On February 14, 1978, Mr. Faravelli selected appellant out of a corporeal lineup at which appellant's counsel was not present. Both of these identifications were ordered suppressed (*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]; *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]), but Mr. Faravelli was permitted to identify appellant at trial based on his testimony that he was identifying appellant from his experience at the time of the crime.

■ Appellant relies upon *People* v. *Hitch, supra,* 12 Cal.3d 641, for his contention that the victim's identifying testimony should have been excluded. *Hitch* requires only that as the photographs were unavailable at trial they be excluded—as they were in this case. Appellant's real argument is that the photo and corporeal lineups were impermissibly suggestive, thus tainting the validity of the in-court identification.

*People* v. *Dewberry* (1974) 40 Cal.App.3d 175 [114 Cal.Rptr. 815], specifically addresses the problem of an in-court identification where evidence of a previous photo identification is no longer available. Appellant argues that *Dewberry* is no longer viable after *Hitch,* but we cannot agree. *People* v. *Hitch, supra,* 12 Cal.3d 641, mandates suppression of the photographs, which was done in this case. It does not address the further problem of the admissibility of an in-court identification where there has been an inadmissible photographic identification. The court in *Dewberry* held that failure to produce the photographs is not fatal in

the absence of evidence that the lineup was suggestive. A mere claim that the lineup might have been unfair is not sufficient to invalidate the in-court identification. (*Id.*, 40 Cal.App.3d at p. 181.)

Here, there was evidence that the photo lineup had been from a "mug" book—minimizing the possibility of suggestiveness. The court had before it photographs of the excluded corporeal lineup. Based on the photographs the trial court had "no hesitancy in finding this is a good lineup, in that it does not suggest impermissibly any one individual out of the six." Furthermore, there was a clear, independent source for Mr. Faravelli's in-court identification. Mr. Faravelli observed appellant at close range for the better part of an hour. Fifteen minutes of that time was spent sitting across a table from appellant while the two had coffee. Apart from either the photo or the corporeal lineup, the in-court identification was shown to the satisfaction of both the trial court and this court to have been independently derived.

■ Appellant maintains that incriminating statements made to the officers during the return trip to California were inadmissible because he had not been given his *Miranda* rights, and the officers on the train had an opportunity to "soften him up" through conversation. (*People v. Honeycutt* (1977) 20 Cal.3d 150 [141 Cal.Rptr. 698, 570 P.2d 1050].)

*Honeycutt* is distinguishable on its facts, and voluntary statements are not a violation of the *Miranda* rule. (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 478 [16 L.Ed.2d 694, 725-726, 86 S.Ct. 1602, 10 A.L.R.3d 974].) In *Honeycutt* the defendant was deliberately "softened up" by the police officer who made disparaging comments about the victim and engaged in ingratiating conversation. In the instant case, the appellant was not questioned by the officers about the crimes. The fact that he had to spend several days in close quarters with the police officers was strictly his own doing. It was appellant who brought up the subject of the charges against him by requesting a copy of the complaint, and apparently attempted to use the return time to work out a deal regarding a plea. There is no indication here of the premeditated trickery condemned by *Honeycutt*. (*People v. Patterson* (1979) 88 Cal. App.3d 742, 752 [152 Cal.Rptr. 183]; *People v. Kyllingstad* (1978) 85 Cal.App.3d 562, 566 [149 Cal.Rptr. 637].)

■ Appellant contends that his offers to plead guilty made to the police during the return trip should have been excluded pursuant to Evi-

dence Code section 1153 and Penal Code section 1192.4, prohibiting introduction into evidence of bona fide plea negotiations. Here, appellant twice offered to plead guilty to robbery. The offers were not made in the course of bona fide plea negotiations but were merely unsolicited admissions by appellant without any understanding that they would be inadmissible. They do not come within the protection of the above code sections.

*Statute of Limitations*

Appellant's final contention is that there was a defect in the amended information on which he was tried which, because it was jurisdictional, requires reversal. We agree that there was a jurisdictional defect: the accusatory pleading showed on its face that the statute of limitations had run on the charges of robbery, false imprisonment and auto theft, and contained nothing to indicate tolling of the statutes. (*In re Demillo* (1975) 14 Cal.3d 598, 601 [121 Cal.Rptr. 725, 535 P.2d 1181].) We do not agree that the defect requires reversal.

Normally, where an accused has been tried on an information containing a jurisdictional defect he is entitled to retrial. (*People v. Morgan* (1977) 75 Cal.App.3d 32 [141 Cal.Rptr. 863].) Here, however, there is no longer a dispute as to whether the statute was tolled. Appellant concedes that during the time in question he was out of the state incarcerated in a Virginia prison. This concession was made at oral argument and was also an element of the admitted facts necessary to raise appellant's contentions previously discussed with respect to the interstate agreement on detainers. Penal Code section 802 excludes from the limitation period time during which the defendant is not within this state. There is, then, no factual issue with respect to whether the statute was tolled; the facts are admitted and the operation of Penal Code section 802 is clear.

Nothing in the case law requires reversal or retrial for jurisdictional defects when those defects are as a matter of law cured on the undisputed record. (See *People v. Zamora* (1976) 18 Cal.3d 538, 563-564, especially fn. 25 [134 Cal.Rptr. 784, 557 P.2d 75].) *Zamora* calls for a jury trial on limitations issues only when after a preliminary evidentiary hearing at which the People prevail, the limitation issue "remains disputed." (*Id.*) To decide otherwise in this case would be to require

further proceedings at the trial level which could be of no legal benefit to the appellant but which would most certainly waste his time and the taxpayers' money.

The judgment is affirmed.

Caldecott, P. J., and Christian, J., concurred.

A petition for a rehearing was denied August 27, 1980, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1980. Bird, C. J., was of the opinion that the petition should be granted.