[No. E001347. Fourth Dist., Div. Two. May 6, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JOSEPH LEWIS, Defendant and Appellant.

**COUNSEL**

Albert E. Hirst III, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HERRIN, J.***—Charged by information with murder (Pen. Code, § 187), defendant Michael Joseph Lewis was tried to a jury and convicted of the lesser included offense of involuntary manslaughter (Pen. Code, § 192). An allegation of firearm use (Pen. Code, § 12022.5) was found to be true. Defendant has appealed from the judgment sentencing him to state prison for a term of six years.

On this appeal, defendant contends: (1) prosecution and conviction for manslaughter is barred by the statute of limitations; (2) the prosecution should not have been permitted to impeach a defense witness with alleged prior inconsistent statements, and (3) the upper term should not have been imposed.

### FACTS

Defendant shot and killed Edward Patrick Dennick at the Silver Dollar Bar in Yucca Valley on January 29, 1980. Dennick arrived at the bar first. While playing pool, he told his brother he owed defendant $75. When defendant entered the bar, he motioned for Dennick to step outside.

The testimony at trial provided varying accounts of what happened next. According to one version, supported by the victim's brother and other

---

*Assigned by the Chairperson of the Judicial Council.

prosecution witnesses, defendant drew a gun, placed it against Dennick's chest, and deliberately pulled the trigger. Dennick's brother and another man then jumped on defendant and tried to subdue him. During this struggle the gun discharged a second time. Defendant struggled free, waved the gun around, and fled in a truck owned by his employer.

According to defendant's testimony, supported to varying degrees by other evidence, he stepped outside to engage Dennick in a fist fight. During the fight Dennick drew a gun from his waistband. Defendant grabbed at the gun and struggled for possession. While doing so he was attacked by Dennick's brother and another man. During the struggle the gun discharged three times. After the third shot defendant found he had the gun in his hand. He waved the others away and escaped.

Autopsy evidence indicated that the victim was killed by a single bullet which was fired with the muzzle of the gun not more than one-quarter inch from the victim's skin. The bullet entered on the right side of the sternum in midchest, penetrated the heart and lungs, and exited on the left side of the back. If the victim was standing erect, the gun must have been tilted downward. If the gun was held horizontally, the victim must have been leaning forward.

Defendant did not return to his employment and abandoned his employer's truck near Hemet. During the following years, by his own admission, he lived under various aliases in Arizona, Texas, and Alabama. A warrant was promptly issued for defendant's arrest on a charge of murder but efforts to locate him were unsuccessful until March 1984 when defendant was found in Alabama under the name of Irving Jones.

I

■ While there is no statute of limitations for murder (see Pen. Code, § 799), the statute of limitations for manslaughter is three years, running from the date of *commission* of the offense. (Pen. Code, § 801.) At the time of the crime in the present case, in 1980, the statute of limitations was three years calculated from the *discovery* of the offense. (Pen. Code, former § 800.) The distinction between discovery and commission has no significance here, however, because the Attorney General concedes the crime was discovered as soon as it was committed.

The information charged only the crime of murder and did not include any allegations of circumstances to toll the running of the statute of limitations. A defense based on the statute of limitations was not raised at trial nor was the jury instructed on it.

For the first time on appeal defendant urges that his conviction is jurisdictionally defective because the information was filed more than three years after the crime was discovered and did not include tolling allegations. He relies primarily on *People* v. *Rose* (1972) 28 Cal.App.3d 415 [104 Cal.Rptr. 702], in which a defendant charged with murder was convicted of manslaughter and raised a statute of limitations defense for the first time on appeal. The reviewing court, per Kaus, P. J., stated: "It has been the law of this state ever since *People* v. *Miller,* 12 Cal. 291, that on an indictment for murder—which crime is, of course, not governed by any statutory period—filed more than three years after the homicide, there can be no conviction for the lesser included offense of manslaughter unless the accusatory pleading shows some bar to the application of the statute of limitations. None having been alleged here, the conviction is jurisdictionally defective and must be reversed. (*People* v. *McGee,* 1 Cal.2d 611, 613 [36 P.2d 378].) This holding is compelled not only by the law of this state but by the overwhelming weight of authorities. (See also *People* v. *Picetti,* 124 Cal. 361 [57 P. 156]; see generally Annot. 47 A.L.R.2d p. 887.)" (*People* v. *Rose, supra,* 28 Cal.App.3d at p. 417, fn. omitted. See also, *People* v. *Morgan* (1977) 75 Cal.App.3d 32, 35-37 [141 Cal.Rptr. 863].)

In this case, as in *Rose,* the failure to plead and prove facts showing timely commencement of the action was an error of jurisdictional proportions. Unlike *Rose,* however, the error here was not prejudicial and does not require reversal of the conviction. This is so because the issuance of a valid warrant for defendant's arrest shortly after the commission of the crime is an undisputed fact and the issuance of the arrest warrant tolled the limitations period as a matter of law. The existence of an event tolling the period being an undisputed fact, the error in failing to plead that event or to prove it to the jury is harmless.

A similar situation was presented in *People* v. *Posten* (1980) 108 Cal.App.3d 633 [166 Cal.Rptr. 661]. There, as in *Rose,* the limitations issue was evidently overlooked in the trial court and circumstances sufficient to toll the limitations period had not been alleged in the information or proven at trial. However, at oral argument the defendant conceded he had been incarcerated in an out-of-state prison during the time in question. The court affirmed the conviction, stating: "Nothing in the case law requires reversal or retrial for jurisdictional defects when those defects are as a matter of law cured on the undisputed record. . . . To decide otherwise in this case would be to require further proceedings at the trial level which could be of no legal benefit to the appellant but which would most certainly waste his time and the taxpayers' money." (*People* v. *Posten, supra,* at pp. 648-649.)

In the instant case, the appellate record includes a copy of the warrant for defendant's arrest issued on January 31, 1980. The warrant is valid on its face and defendant has not suggested any possible defects in it, though invited to do so. ■ Instead, defendant's only serious argument concerning the warrant is that use of the warrant to establish timely commencement of the action would be an unconstitutional ex post facto application of former section 802.5 of the Penal Code.[1]

In January 1980, when the crime was committed, former section 800 of the Penal Code provided that a felony prosecution was commenced for statute of limitations purposes by the finding of an indictment, the filing of an information, or the certification of the case to the superior court. (Stats. 1978, ch. 663, § 8, pp. 2133-2134.) Circumstances sufficient to toll the limitations period were specified in former section 802 and did not include the issuance of an arrest warrant. (Stats. 1951, ch. 1674, § 23, p. 3834.)

In 1981, former section 802.5 was added, providing: "The time limitations provided in this chapter for the commencement of a criminal action shall be tolled upon the issuance of an arrest warrant . . . ." (Stats. 1981, ch. 1017, § 3, pp. 3927-3928.) Former section 802.5 went into effect on January 1, 1982.

Finally, in 1984, former sections 802 and 802.5 were repealed and the current sections 802, 803, and 804 were adopted. Under section 804, issuance of an arrest warrant is now a commencement of the criminal action rather than merely a circumstance tolling the statutory period.

Former section 802.5 became effective after defendant's crime was committed but before the expiration of the three-year limitations period for manslaughter. Under these circumstances, defendant is mistaken in his assertion that application of the new legislation (former § 802.5) would run afoul of the constitutional prohibition against ex post facto laws.

A law which increases a limitations period or provides a new method of tolling it may be applied immediately to all crimes as to which the period

---

[1]Defendant also argues that application of former section 802.5 denies him due process and equal protection but these arguments are so plainly spurious that no comment is required. Defendant's argument that he should now be allowed to bring a motion to dismiss for delay of prosecution (see *Scherling* v. *Superior Court* (1978) 22 Cal.3d 493, 503-505 [149 Cal.Rptr. 597, 585 P.2d 219]) is also patently worthless. Defendant had ample opportunity and incentive to bring the motion in the court below before trial yet failed to do so. Belated discovery of a meritless statute of limitations issue provides no reason for giving defendant a second opportunity to bring the motion.

has not yet run under the prior law. (*People* v. *Gordon* (1985) 165 Cal.App.3d 839, 851 [212 Cal.Rptr. 174]; *People* v. *Sample* (1984) 161 Cal.App.3d 1053, 1057 [208 Cal.Rptr. 318].) As has been expressly held, "the application of section 802.5 to crimes committed before the enactment but prior to the expiration of the three-year statute does not violate the constitutional prohibition against ex post facto laws." (*People* v. *Sample, supra,* at p. 1057.)

As Judge Learned Hand so aptly put it "Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it." (*Falter* v. *United States* (1928) 23 F.2d 420, 425-426.)

We conclude the ex post facto clause does not apply because the statute of limitations on defendant's crime had not expired before the action against him was commenced.

II

Defendant contends that the prosecutor improperly attempted to impeach a defense witness named Elaine Williams. The contention is meritless.

Elaine Williams testified that on the day of the shooting she went to the Silver Dollar with defendant and two other men. Once inside the bar she saw defendant approach Edward Dennick and exchange angry words with him. Dennick was joined by his brother and another man, there was some pushing and shoving, and somehow the four men "wound up outside" near the front door. The witness heard two shots and went out the back door and around toward the front where she saw defendant and Dennick struggling with something in their hands. She then heard another shot and Dennick fell to the ground.

As part of his direct examination defense counsel asked whether, on the night of the shooting, the witness had told Detective Peterson "what you've told us today" and she said she had. On cross-examination, however, she admitted she had not told Detective Peterson "anything about going out the back door, going all the way around, and then seeing some struggle that was going on in the front of the bar." She said she did not mention it because she was not asked. On redirect she repeated that she had not told

Peterson she had seen a struggle in front of the bar. She said she had not been asked "about that" and could not remember what questions had been asked.

The prosecutor called Detective Peterson as a rebuttal witness and asked whether, during the interview on the night of the shooting, Elaine Williams had mentioned seeing defendant and Dennick struggling outside the bar with something in their hands. Defense counsel objected that this was improper impeachment because it had not been established that Williams had been asked questions on that topic. The court overruled the objection, commenting that defense counsel could "cover the facts on cross-examination." The witness said Williams had not mentioned seeing a struggle outside the bar. On cross-examination, Peterson admitted Williams had told him she had seen a "scuffle" and that he had not asked her to describe it.

Called as a witness in surrebuttal, Peterson said he did not conduct an in-depth interview with Williams and his primary purpose in interviewing her had been to find out defendant's true identity and where he might be located.

A witness may be impeached by evidence of a prior inconsistent statement. (Evid. Code, § 780, subd. (h).) ▆▆ In this context, silence can be an inconsistent statement: "'A *failure to assert* a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact . . . . There may be explanations, indicating that the person had in truth no belief of that tenor; but the conduct is "prima facie" an inconsistency.'" (*People* v. *Brophy* (1954) 122 Cal.App.2d 638, 649 [265 P.2d 593] quoting Wigmore, original italics.) However, a witness "may not be impeached by showing that he omitted to state a fact or stated it less fully at a prior proceeding unless his attention was called to the matter at that time and he was then asked to testify concerning the very facts embraced in the questions propounded at the trial." (*Brooks* v. *E. J. Willig Truck Transp. Co.* (1953) 40 Cal.2d 669, 675 [255 P.2d 802].)

▆ Here the matter was raised by defense counsel on direct examination of witness Williams and pursued further on cross-examination without objection. The first objection was raised when Detective Peterson was called in rebuttal. At that point the jury already knew that Williams had been interviewed on the night of the shooting and had failed to give many of the details to which she testified at trial. Whether this failure tended to impeach her testimony depended on the circumstances of the earlier interview and the questions asked. As the subject matter was already before the jury, the court acted properly in overruling the objection. In any event, the testimony of Peterson did little if any damage to Williams' credibility and thus any error was harmless. Peterson admitted he had not interviewed Williams in

depth, had not asked her to describe the scuffle she reported seeing, and had been mainly interested in locating defendant. Defendant could not have been prejudiced by this testimony.

## III

■ Finally, defendant contends that the court failed to state proper reasons for imposing the upper term. In explanation of the choice of the upper term, the court stated: "And I'm imposing the aggravated term, not because of the facts of the incident before the Court, but because of the background of the defendant. I think that that background alone is sufficient to warrant the aggravated term. In addition to the background, the defendant has been on parole, and that—the conduct on parole was unsatisfactory, and the crime did involve a great deal of violence. So I'm imposing the aggravated term of four years for these reasons."

Defendant maintains it was improper for the court to rely on the crime's having involved a "great deal of violence" because violence is inherent in the crime of manslaughter with a gun use enhancement. By not arguing the contrary, defendant tacitly concedes the upper term could properly have been imposed based on his criminal background and poor performance on parole.

Although the court apparently did mention the circumstances of the offense as one of the reasons for imposing the upper term, the court also stated very clearly that defendant's background alone was sufficient to warrant the upper term. Accordingly, the court's reference to the circumstances of the offense was not determinative of the actual sentence. We need not decide whether the reference was error because the error would necessarily have been harmless. (See *People* v. *Jackson* (1985) 37 Cal.3d 826, 839 [210 Cal.Rptr. 623, 694 P.2d 736].)

Judgment affirmed.

Rickles, Acting P. J., and Kaufman, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 23, 1986.