[No. B183150. Second Dist., Div. One. Aug. 16, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JAIME ALVARADO, Defendant and Appellant.

COUNSEL

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ROTHSCHILD, J.**—We hold that the prosecutor in this case committed prejudicial misconduct when she began her rebuttal jury argument by stating, "I have a duty and I have taken an oath as a deputy District Attorney not to prosecute a case if I have any doubt that that crime occurred. [¶] The defendant charged is the person who did it."

A jury convicted Jaime Alvarado of second degree robbery (Pen. Code, §§ 211, 212.5; all further undesignated section references are to the Penal Code). Thereafter, he admitted having suffered two prior serious felony convictions (§ 667, subd. (a)) which also constituted "strikes" under the three strikes law (§§ 667, subds. (b)–(i), 1170.12). He was sentenced to prison for 35 years to life.

Alvarado appeals, contending that (I) during her closing argument, the prosecutor committed prejudicial misconduct by improperly vouching for the integrity of her office and the victim when she argued that Alvarado was the perpetrator because he was the person charged, that no objection and admonition would have cured the harm, and that, if an objection and admonition would have cured the harm, his attorney was ineffective by failing to object and request an admonition. Alvarado also contends that his counsel was ineffective because she failed to object to (II) uncharged misconduct evidence that when arrested he possessed a cocaine pipe, and (III) the arresting officer's testimony that (1) Alvarado resembled the victim's description of the robber in a police flyer and (2) the officer reported the similarity to his supervisor.

■ We agree with contention (I) and reverse the judgment on that ground. Because of our conclusion we need not decide issues II and III.

## BACKGROUND

Viewing the evidence as we must in the light most favorable to the judgment, on June 28, 2004, about 12:30 or 1:00 p.m., 16-year-old Hector Pedraza was walking his bicycle near Seventh and Broadway in Los Angeles when Alvarado approached and asked for his gang affiliation. Pedraza responded that he did not belong to a gang. Alvarado's tattoos scared Pedraza. While making a motion under his shirt toward his waistband, Alvarado told Pedraza to give him the bicycle and then made a more aggressive demand for it. Pedraza gave Alvarado the bicycle because he was afraid Alvarado might have a gun or knife in his waistband. Alvarado also took Pedraza's CD player

and earphones and rode away. Pedraza followed for about half a block until he lost sight of Alvarado. About an hour later, after having lunch with his father and grandfather, Pedraza and his grandfather went to the police station where he described the robber, including his tattoos, height and weight. Pedraza's description closely matched Alvarado.

A few days later, on July 2, 2004, Los Angeles Police Officer Eduardo Alvarez observed Alvarado standing against a wall on East Main Street just south of Seventh Street. Alvarado was "holding a glass pipe or narcotic paraphernalia." The pipe was the type used for smoking cocaine. After detaining Alvarado, Alvarez confiscated the pipe. He later advised his watch commander that Alvarado matched the description on the crime alert flyer, which was based on Pedraza's description.

Pedraza "positive[ly]" identified Alvarado as the robber with "no doubts" during a photographic lineup and at trial. Alvarado did not present a defense.

## DISCUSSION

Alvarado contends that the prosecutor committed prejudicial misconduct during her closing argument by vouching for the integrity of her office and Pedraza's credibility when she began her rebuttal by arguing: "I have a duty and I have taken an oath as a deputy District Attorney not to prosecute a case if I have any doubt that that crime occurred. [¶] The defendant charged is the person who did it." Alvarado also contends that no objection and admonition would have cured the harm from this comment, and that his attorney thus did not forfeit the issue by failing to object. We agree.[1] Because the prosecutor apparently made the challenged comments in response to defense counsel's argument, we set out both attorneys' arguments in some detail.

### A.

During her opening argument, the prosecutor referred to Pedraza as a "little boy on the stand" and asked the jury to draw on "everyday life experience" in determining whether he testified truthfully. She argued that "[i]t is up to you [the jury] whether or not you believe Hector Pedraza, but there is only one version of events and that is his. And I submit to you that he is credible." The prosecutor further argued that Pedraza's bicycle was taken from him through

---

[1] Because we conclude that no objection and admonition would have cured the prejudice, we do not address Alvarado's alternative argument that his counsel was incompetent for failing to object.

fear by "the guy who is standing on the street corner all tatt[oo]ed up approaching little *kids* and asking *them* where *they're* from" and "[s]imulating that he has a weapon and then taking *their* bicycle. That is the guy that little Hector Pedraza saw . . . ." (Italics added.)

In her closing argument, defense counsel disagreed with the prosecutor's characterization of Pedraza as a little boy and argued "Pedraza in less than a year is going to be an adult. [¶] He is no little boy. In fact, he is probably [not] smaller than Mr. Alvarado. So if [the prosecutor] wants you to think Mr. Pedraza is a little boy and she wants to characterize him that way, that means her case is weak because she can't even be honest about his age and about who he is. [¶] She also said that there was testimony that Mr. Alvarado is approaching little kids. Where was that testimony? She just said it as though it is true. Why would she do that, if it is not true? [¶] She is saying that because her case is weak and she is trying to get you to sympathize [with] Mr. Pedraza and see him as a little boy, as a little child, but we know he is not a little child. He is a juvenile under 18, but he was 16 years old when this occurred and he is 17 years old now. He is almost an adult. . . . He is not a little child. There are no other little children who have been preyed upon that [the prosecutor] knows about or there is any testimony of, so I just want to make that personally clear right now."

Later, defense counsel further argued: "Clearly the prosecution wants Mr. Alvarado convicted to the point where they are going to claim that Hector Pedraza is a little child so we know they have an interest in not even really telling the truth of what happened in order to convict Mr. Alvarado. So if the prosecution is willing to portray Mr. Pedraza as a little child in order to get sympathy for him, what else have they done in terms of advising him, suggesting things to him, encouraging him, adding things to the statement? [¶] I suggest to you . . . that it is very, very suspicious because Hector Pedraza has not been accurate in his descriptions as [the prosecutor] has suggested. In fact, his description and his testimony have been laced with errors. . . . [¶] Because with all the help that he has received, all the times he has gone through his testimony, with all the talking he has had with officers and the prosecution, he still can't get the facts right." Defense counsel then recounted several inconsistencies in Pedraza's testimony, including that he did not originally tell the police that Alvarado took his CD player, and that he described his assailant as having a shaved head when Alarado's photograph depicted him with some hair.

After arguing that Pedraza was not credible in claiming he was scared, defense counsel suggested to the jury that "Pedraza was coached by those

officers and *possibly* by the prosecutor because . . . it is really important that we establish that [Pedraza] w[as] afraid or else we're not going to prove our case. So any opportunity you have, you [Pedraza] just say that you are scared because that is what [Pedraza] was doing. He was saying it, even when it didn't relate to what he was being asked, and he kept doing it even when the judge asked him to please refrain. So why was he doing that? It wasn't because he was so scared[;] he wanted to let you know. [¶] . . . [H]e was doing that because he was coached because the prosecution needs that element in order to prove their case." (Italics added.) Defense counsel asked the jury to remember that Pedraza "had at least 14 conversations between law enforcement and prosecution . . . . If this case were so simple, as [the prosecutor] suggests, if it is just a no brainer, why would he need 14 separate conversations with law [enforcement] and prosecutors? Memories can be faulty. People get things wrong."

The prosecutor began her rebuttal by saying: "*I have a duty and I have taken an oath as a deputy District Attorney not to prosecute a case if I have any doubt that that crime occurred. [¶] The defendant charged is the person who did it.* To insinuate, suggest, or to say outright that I would risk my job, my profession, multiple police officers—I think one detective was on what, 33 years, another one was 27, another one just starting his career—to suggest that any of us would put our professional career on the line because this thug took some kid's bike is offensive and it is preposterous." (Italics added.) The prosecutor denied that anyone told Pedraza what to say. Specifically, she argued: "Nobody is coaching Hector Pedraza to do anything but to say the truth. He told you that from the stand. I asked him after cross-examination, what did I tell you was the most important thing and he told you [the jury, ']to tell the truth.[']"

Referring to defense counsel's argument about whether Pedraza was "a kid" or whether he was appellant's "equal," the prosecutor argued: "You had the opportunity to look at him. Do you think they're equal? Do you think he looks like a kid? Do you think he looked like a kid almost a year ago?" She further argued: "And if we're going to paint a picture, then, hey, why don't [we tell Pedraza to] say the guy I saw had a gun. I di[d]n't see him just motioning for it under his T-shirt in his saggy waistband. I saw the damn gun. Why wouldn't we coach him to say that?"

### B.

█ " 'The applicable federal and state standards regarding prosecutorial misconduct are well established. " 'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the

conviction a denial of due process." ' " . . . Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " . . . ' . . . .

■ "Regarding the scope of permissible prosecutorial argument, . . . ' " 'a prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. . . . It is also clear that counsel during summation may state matters not in evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature. ' . . . [¶] . . . ' . . . A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state. . . . Prosecutors who engage in rude or intemperate behavior, *even in response to provocation by opposing counsel*, greatly demean the office they hold and the People in whose name they serve.' " (*People v. Hill* (1998) 17 Cal.4th 800, 819–820 [72 Cal.Rptr.2d 656, 952 P.2d 673], italics added, citations omitted.)

■ "A prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record. . . . Nor is a prosecutor permitted to place the prestige of her office behind a witness by offering the impression that she has taken steps to assure a witness's truthfulness at trial. . . . However, so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the 'facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief,' her comments cannot be characterized as improper vouching." (*People v. Frye* (1998) 18 Cal.4th 894, 971 [77 Cal.Rptr.2d 25, 959 P.2d 183], citations omitted; accord, *People v. Stewart* (2004) 33 Cal.4th 425, 499 [15 Cal.Rptr.3d 656, 93 P.3d 271].)

We conclude the prosecutor's comments were misconduct, even after considering that they may have been in response to defense counsel's argument. Defense counsel argued that the police and "possibly" the prosecutor "coached" Pedraza during their 14 interviews, a number so excessive for such a simple case as to suggest that the interviews were not to discover the truth but artificially to enhance Pedraza's credibility. Defense counsel further argued that the prosecutor falsely asked the jurors to view Pedraza, 16 years old at the time of the crime, as a "little boy" when he was not, and falsely suggested that Alvarado had robbed other "little boys" when there was no

such evidence, all to support her theory that the prosecution exaggerated the strength of its evidence. Much of defense counsel's argument was supported by facts and inferences from the record. Even if we assume that the defense unfairly attacked the prosecutor, the prosecutor's comments neither answered these accusations nor were otherwise justified by defendant's argument. Rather, the prosecutor impermissibly invited the jury to convict Alvarado based on her opinion that he was guilty and on the prestige of her office by responding: "I have a duty and I have taken an oath as a deputy District Attorney not to prosecute a case if I have any doubt that that crime occurred. [¶] The defendant charged is the person who did it." The only reasonable inference from these comments is that (1) the prosecutor would not have charged Alvarado unless he was guilty, (2) the jury should rely on the prosecutor's opinion and therefore convict him, and (3) the jurors should believe Pedraza for the same reason. This argument constituted misconduct.

■ Having concluded that the prosecutor committed misconduct, we must determine whether (1) the misconduct was prejudicial and (2) an objection and admonition would have cured any harm. "Although the remarks of a defense counsel do not justify retaliation by the prosecution, such remarks must be considered in assessing the prejudicial effect of the prosecutorial misconduct." (*People v. Perry* (1972) 7 Cal.3d 756, 789 [103 Cal.Rptr. 161, 499 P.2d 129], overruled on other grounds in *People v. Green* (1980) 27 Cal.3d 1, 28–34 [164 Cal.Rptr. 1, 609 P.2d 468].)

■ " 'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. . . .' . . . [¶] . . . A defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. . . . In addition, failure to request the jury be admonished does not forfeit the issue for appeal if ' "an admonition would not have cured the harm caused by the misconduct." ' " (*People v. Hill, supra*, 17 Cal.4th 800, 820, citations omitted.)

■ We conclude that the misconduct was prejudicial and that an admonishment would not have cured the harm. Although Pedraza accurately described Alvarado and positively identified him with "no doubts," he was the sole eyewitness to the charged crime, and thus the evidence against Alvarado was not overwhelming. Particularly where, as here, an identification of a stranger is based on a single quick encounter, the certainty of the identification does not necessarily correlate to its accuracy. (See Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2006) § 22.1, p. 572.) When arrested, Alvarado did not possess any of the items Pedraza reported stolen, none of

which were ever found. Alvarado's counsel pointed out several inconsistencies in Pedraza's accounts of the crime in her argument. The prosecution's case turned on Pedraza's credibility, making it too late for an admonition to unring the bell sounded by the prosecutor's improper attempt to bolster his credibility. In addition, the prosecutor's argument that Alvarado may have committed similar crimes against other "little kids" may have suggested to the jury that she had additional evidence of his guilt that had not been presented, further strengthening the improper inference that the jury should rely on her opinion and convict him on that basis. (*People v. Frye, supra,* 18 Cal.4th at p. 971.)

Moreover, these opprobrious comments cannot be viewed in isolation. The prosecutor further argued that the arresting officer saw Alvarado "within two blocks of where the robbery occurred again hanging out with his crack pipe, he sees [Alvarado] and says, bam, there is our robbery suspect. That is how good the description [given by Pedraza] was." Although we do not decide whether defense counsel was ineffective for not objecting to this additional evidence, the prosecutor invited the jury to find Pedraza credible based on Alvarado's "hanging out with his crack pipe," and the arresting officer's opinion that he matched Pedraza's description. Alvarado, however, was not charged with possessing a crack pipe or any other narcotics paraphernalia, and the officer's opinion whether Alvarado matched Pedraza's description shed no light on whether Pedraza accurately described his assailant in the first place. Viewed in context, the challenged comments were so prejudicial that an admonition would not have dispelled the harm. Accordingly, defense counsel did not forfeit the issue by failing to object and request an admonition.

## DISPOSITION

The judgment is reversed. Pursuant to Business and Professions Code section 6086.7, subdivision (b), the clerk is ordered to send a certified copy of this opinion to the State Bar.

Mallano, Acting P. J., concurred.

**VOGEL, J.,** Dissenting.—Assuming misconduct, I do not believe it was prejudicial.[1] Pedraza's uncontroverted identification of Alvarado was absolute. He first noticed Alvarado when he was on the other side of the street, and watched as he approached. He became uncomfortable when he saw Alvarado's tattoos and paid close attention to Alvarado's appearance (and

---

[1] In my view, the only misconduct was the prosecutor's affirmation of Alvarado's guilt, and her other comments, in context, were permissible.

thus was able to identify the specific tattoos on Alvarado's arms and neck). He testified that: "When I realized that I was being robbed, I decided to pay attention to details so this person could be caught later on." Pedraza described Alvarado to the police, and "positive[ly]" identified him from a photographic lineup and again at trial.

Given this air-tight identification and the absence of any affirmative defense that might have given the jury an alternative scenario, I do not see how the prosecutor's comment could possibly have affected the outcome. I would affirm the judgment.