[No. G038013. Fourth Dist., Div. Three. Nov. 18, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT CASTILLO, Defendant and Appellant.

## COUNSEL

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela Ratner Sobeck and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FYBEL, J.—**

### INTRODUCTION

Defendant Robert Castillo was convicted of rape, sodomy by force, and kidnap to commit rape. He was sentenced to 31 years to life in prison. We affirm.

█ Defendant argues there was not substantial evidence supporting the jury's finding that the prosecution was commenced before the statute of limitations expired. A felony prosecution commences for statute of limitations purposes when an indictment or information is filed, or an arrest warrant or bench warrant issues, with certain provisions. (Pen. Code, § 804.) Based on the date on which the information was filed in this case, which is a matter of public record, it is indisputable that the statute of limitations did not expire before the prosecution against defendant was commenced. In view of the indisputable date of the filing of the information, we hold substantial evidence supports the judgment; the prosecution commenced before the statute of limitations expired.

In *People v. Lewis* (1986) 180 Cal.App.3d 816, 821 [225 Cal.Rptr. 782] (*Lewis*), the appellate court considered a warrant for the defendant's arrest, which was not in evidence at trial, but which was a part of the appellate record, to conclude the prosecution against the defendant had commenced before the expiration of the statute of limitations. That court relied, in part, on *People v. Posten* (1980) 108 Cal.App.3d 633, 648 [166 Cal.Rptr. 661] (*Posten*), in which the appellate court concluded, "[n]othing in the case law

requires reversal or retrial for jurisdictional defects when those defects are as a matter of law cured on the undisputed record." No reported case or statutory amendment has changed the proposition of law set forth in *Posten* and quoted by *Lewis*. To the contrary, in *People v. Williams* (1999) 21 Cal.4th 335, 345 [87 Cal.Rptr.2d 412, 981 P.2d 42] (*Williams*), the California Supreme Court cited *Lewis* with approval on this exact point.

This case is stronger than *Lewis* in favor of affirmance. In *Lewis*, the appellate court looked outside the publicly filed charging document to determine whether the prosecution had been commenced before the limitations period expired. Here, the charging document—the information—shows on its face that the prosecution was timely commenced.

The trial court erred by instructing the jury that it must make a factual finding regarding the commencement date of the prosecution. Defendant correctly argued in the trial court that the legal issue of the timing of commencement of the prosecution was an issue for the court, not a factual issue for the jury. The court erred both in giving any instruction on the legal issue and in instructing the jury with an incorrect instruction prepared by the prosecutor. The instruction was fundamentally incorrect because it referred to the date of filing of the felony complaint, not the information. On appeal, defendant does not argue instructional error. Instead, he contends the evidence at trial on the statute of limitations issue was insufficient to uphold the judgment.

Defendant also argues he was denied due process because the prosecutor committed misconduct during voir dire. We conclude the prosecutor did commit misconduct, but the trial court's admonition to the jury was sufficient to cure the misconduct, and defendant did not suffer prejudice as a result of the misconduct.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

A. *Sexual Assault on L.R.*

On February 23, 1995, during the early evening, L.R. was attacked by defendant in a walkway between two apartment buildings as she walked home from a nearby 7-Eleven store. Defendant was carrying a knife, and ordered L. to be quiet or he would kill her. With his arm around her neck, defendant forced L. to a secluded area. Defendant ordered L. to remove her pants, which she did out of fear. Defendant told L. to get onto her hands and knees, and he raped and sodomized her. Defendant then fled.

L. dressed and ran back to the 7-Eleven, where she told the clerk she had been raped; the clerk called the police. L. was examined at a hospital; injuries

consistent with forced sodomy were reported. Sperm samples were collected and sent for testing. In 2002, DNA testing established defendant was L.'s attacker.

## B. Evidence of Other Sexual Assaults by Defendant

At trial, evidence of two other sexual assaults committed by defendant was offered under Evidence Code section 1108. One night in March 2000, D.J. was walking alone about midnight when defendant grabbed her from behind and put his arm around her neck. Defendant dragged D. behind a grocery store, to an unlit area between a parked semitrailer and a retaining wall. Defendant ordered D. to take off her pants. After she did so, D. grabbed defendant's genitals and squeezed as hard as she could until defendant released her from his grip. D. grabbed her belongings and ran to a nearby gas station where she called the police.

A composite sketch was prepared based on D.'s description of her attacker. In January 2004, D. identified defendant from a photographic lineup.

At 9:00 or 10:00 p.m. on April 4, 2000, N.F. was attacked while walking to a friend's house in Moreno Valley. Defendant grabbed her from behind, choked her, and dragged her to the rear of a nearby church. Defendant ordered N. to remove her clothes and lie down. Defendant raped N., then fled. N. ran to the friend's house and contacted the police. DNA testing in 2002 identified defendant as N.'s attacker. At trial, N. positively identified defendant as the man who had raped her.

## C. Procedural History

A felony complaint against defendant was filed on August 22, 2002, for the sexual assault on L. Following a preliminary hearing, an information was filed on March 27, 2003. Defendant was charged with forcible rape (Pen. Code, § 261, subd. (a)(2) [count 1]); sodomy by use of force (id., § 286, subd. (c)(2) [count 2]); and kidnap to commit rape (id., § 209, subd. (b)(1) [count 3]). The information alleged that as to count 1, defendant kidnapped the victim in violation of Penal Code sections 207, 209, and 209.5, within the meaning of Penal Code section 667.61, subdivisions (a), (c)(1), and (d)(2).[1] With regard to the statute of limitations, the information alleged the charges were timely pursuant to Penal Code former section 803, subdivision (i). Defendant pleaded not guilty to all counts.

Defendant later filed a motion to withdraw his not guilty plea; the trial court granted the motion. Defendant demurred to the information, arguing

---

[1] As to counts 1 and 2, the information also alleged defendant inflicted great bodily injury on the victim. (Pen. Code, § 12022.8.) This allegation was dismissed before trial.

counts 1 and 2 had not been timely commenced under Penal Code section 800, and former section 803, subdivision (i), which extended the statute of limitations, was unconstitutional. The trial court overruled the demurrer, and defendant again pleaded not guilty.

A jury found defendant guilty of all counts, and found all the allegations true. Defendant's motion for a new trial was denied. The trial court sentenced defendant to 25 years to life on count 1; a consecutive term of six years on count 2; and 15 years to life on count 3, which was stayed pursuant to Penal Code section 654. Defendant timely appealed.

DISCUSSION

I.

STATUTE OF LIMITATIONS

A. *Standards of Review*

■ Defendant argues the jury's finding that the criminal action against him was commenced before the expiration of the applicable statute of limitations is not supported by the evidence. When an issue involving the statute of limitations has been tried, we review the record to determine whether substantial evidence supports the findings of the trier of fact. (*People v. Ruiloba* (2005) 131 Cal.App.4th 674, 681–682 [31 Cal.Rptr.3d 838]; *People v. Padfield* (1982) 136 Cal.App.3d 218, 226 [185 Cal.Rptr. 903].) Statutes of limitation must be strictly construed in favor of a defendant. (*People v. Zamora* (1976) 18 Cal.3d 538, 574 [134 Cal.Rptr. 784, 557 P.2d 75] (*Zamora*).) The statute of limitations is not an element of the crime; although the prosecution has the burden of proving the criminal action was commenced within the applicable limitations period, its burden of proof is by a preponderance of the evidence. (*Id.* at p. 565, fn. 27; *People v. Smith* (2002) 98 Cal.App.4th 1182, 1187 [120 Cal.Rptr.2d 185].)[2]

---

[2] Defendant did not argue in the trial court that the prosecution had failed to carry its burden to prove the criminal action had commenced before the expiration of the statute of limitations. Instead, as described in detail, *post*, defendant argued in a pretrial proceeding that application of Penal Code former section 803, subdivision (i), to him would violate his constitutional due process rights as an ex post facto extension of the limitations period. At trial, defendant correctly argued that the time of commencement of a criminal prosecution was a legal issue for the court, not the jury, to determine. In a discussion with the trial court and the district attorney concerning the jury instruction on the statute of limitations, defendant's trial counsel stated he was "certainly not in the position of admitting anything." The Attorney General does not argue on appeal that the issue of sufficiency of the evidence regarding commencement of a criminal prosecution has been waived. Indeed, a challenge to the sufficiency of evidence is forfeited in the trial court only by failure to file a timely notice of appeal. (*People v. Rodriguez* (1998) 17

### B. *Applicable Statutes of Limitation*

Penal Code section 800 sets forth the basic limitations period for rape: "[P]rosecution for an offense punishable by imprisonment in the state prison for eight years or more shall be commenced within six years after commission of the offense."

Penal Code section 803 extends the limitations period for specified sex crimes under certain circumstances. In 2002, former section 803, subdivision (i) read in relevant part as follows: "Notwithstanding the limitation of time described in Section 800, the limitations period for commencing prosecution for a felony offense described in subparagraph (A) of paragraph (2) of subdivision (a) of Section 290, where the limitations period set forth in Section 800 has not expired as of January 1, 2001, . . . shall be 10 years from the commission of the offense . . . ."[3]

For determining whether a case has been commenced within the applicable limitations period, Penal Code section 804 provides as follows: "[P]rosecution for an offense is commenced when any of the following occurs: [¶] (a) An indictment or information is filed. [¶] (b) A complaint is filed charging a misdemeanor or infraction. [¶] (c) A case is certified to the superior court. [¶] (d) An arrest warrant or bench warrant is issued, provided the warrant names or describes the defendant with the same degree of particularity required for an indictment, information, or complaint."

---

Cal.4th 253, 262 [70 Cal.Rptr.2d 334, 949 P.2d 31].) The issue of sufficiency of the evidence is before us and we next address it on the merits.

[3] Certain portions of the former version of Penal Code section 803 (not that quoted *ante*) were declared unconstitutional by the United States Supreme Court in *Stogner v. California* (2003) 539 U.S. 607 [156 L.Ed.2d 544, 123 S.Ct. 2446]. In response, the California Legislature repealed former section 803, and added a new version. (Stats. 2005, ch. 2, §§ 1–3.) The language quoted in the text appears in the current version of section 803 as subdivision (g).

Penal Code former section 290, subdivision (a)(2)(A) read as follows in 2002: "(2) The following persons shall be required to register pursuant to paragraph (1): [¶] (A) Any person who, since July 1, 1944, has been or is hereafter convicted in any court in this state or in any federal or military court of a violation of Section 207 or 209 committed with intent to violate Section 261, 286, 288, 288a, or 289, Section 220, except assault to commit mayhem, Section 243.4, paragraph (1), (2), (3), (4), or (6) of subdivision (a) of Section 261, or paragraph (1) of subdivision (a) of Section 262 involving the use of force or violence for which the person is sentenced to the state prison, Section 264.1, 266, 266c, subdivision (b) of Section 266h, subdivision (b) of Section 266i, 266j, 267, 269, 285, 286, 288, 288a, 288.5, or 289, subdivision (b), (c), or (d) of Section 311.2, Section 311.3, 311.4, 311.10, 311.11, or 647.6, former Section 647a, subdivision (c) of Section 653f, subdivision 1 or 2 of Section 314, any offense involving lewd or lascivious conduct under Section 272, or any felony violation of Section 288.2; or any person who since that date has been or is hereafter convicted of the attempt to commit any of the above-mentioned offenses." Therefore, Penal Code former section 803 applied to the rape and sodomy charges.

## C. *Facts of This Case*

The crimes against L. were committed by defendant on February 23, 1995. The six-year statute of limitations would have expired February 23, 2001. (Pen. Code, § 800.) Because the statute of limitations had not expired before January 1, 2001, Penal Code former section 803, subdivision (i) extended the limitations period to February 23, 2005. The information was filed March 27, 2003, well before the limitations period expired.

### 1. *Pretrial challenge by defendant based on the statute of limitations*

In a demurrer to the information, defendant argued the information had not been filed before the expiration of the statute of limitations because Penal Code former section 803, subdivision (i) was an ex post facto extension of the limitations period, which deprived him of his constitutional rights to due process. Defendant's counsel acknowledged on the record the demurrer would not apply to count 3, which provided for a punishment of life imprisonment in the state prison, and therefore had no statute of limitations. (Pen. Code, §§ 209, 799.) In the demurrer, defendant's counsel based his argument on the filing of the information on March 27, 2003.

The district attorney filed written opposition to the demurrer, arguing the information had been timely filed, and Penal Code former section 803, subdivision (i) did not violate ex post facto principles. The trial court overruled defendant's demurrer. At that time, defendant's counsel stated, "we'd like [a] continuing objection [regarding the] ex post facto due process aspects of those counts as they go through trial. Obviously, those issues, statute of limitations issues, are trial issues as well and we just want the court to know there's a continuing objection on the constitutionality." No statute of limitations challenge other than the ex post facto argument was raised before trial, and no challenge was ever raised as to the timeliness of count 3.

### 2. *Jury instructions*

During trial, the issue of the statute of limitations was never raised. At the prosecution's request, the trial court took judicial notice that the felony complaint was filed August 22, 2002, and advised the jury it had done so. The jury was never advised that the information was filed March 27, 2003, and the information was not an exhibit at trial.

Outside the presence of the jury, the trial court and counsel discussed proposed jury instructions, including an instruction regarding the statute of limitations allegation, which was drafted by the district attorney. The instruction read in relevant part, as follows: "Counts 1 and 2 were filed pursuant to

Penal Code section 803, subdivision (i), which may extend the normally applicable statute of limitations under specified circumstances as alleged below. The People have the burden of proving the following factual allegations in order for Penal Code section 803, subdivision (i) to apply. [¶] If you find the defendant guilty beyond a reasonable doubt of counts 1 and/or 2, which were filed pursuant to Penal Code section 803, subdivision (i), you must further determine, as to each count in which you find guilt, whether the People have proved the following factual allegations: [¶] 1. The six year limitation period had not expired as of January 1, 2001, from the date of commission of the alleged crimes on February 23, 1995. [¶] 2. The reporting person must have alleged that she was a victim of a crime specified in Penal Code Section 261[, subdivision] (a)(2) or 286[, subdivision] (c). [¶] 3. *A criminal complaint containing the allegations set forth in Counts 1 and 2 was filed within 10 years of the alleged offense on February 23, 1995.*" (Italics added.)

Defendant's counsel argued the issue of when a criminal prosecution commences under Penal Code section 803 was a legal issue which should be decided by the court, not the jury. Counsel and the trial court engaged in the following colloquy:

"Mr. Weinberg [defense counsel]: Okay. Please note my objection as to the giving of that instruction. I think it's misleading. I also think that it puts the burden of the law in making a legal finding on the part of the jury.

"The Court: Your objection is not to the instruction and the way it is worded. Your objection is to instructing the jury at all on the allegation pursuant to Penal Code section 803; is that what you're saying?

"Mr. Weinberg: Yes. And even beyond that, the way that the instruction is drafted, I think, [impermissibly] shifts the responsibility to the jury of making that finding.

"The Court: Is there something that we could do to the draft of the instruction that would cause you to withdraw an objection? . . .

"Mr. Weinberg: No. No.

"The Court: Your problem is you don't want it given at all because you don't think that the jury should have to make a finding on that subject; is that right?

"Mr. Weinberg: Yes, in general terms. . . . [¶] . . . [¶] . . . The only definition of [Penal Code section] 803[,] sub[division] (i) that's given in this

instruction that I can see is the second sentence of the special instruction that, essentially, in general terms, [section] 803[, subdivision] (i) extends the normally applicable statute of limitations under specified circumstances below. And then it's laid out in these three elements, I believe. Basically, it seems to me like the jury is put in the position of deciding the law and not just the facts. And I think it would be confusing.

"The Court: Well, [Penal Code section] 803 doesn't routinely come into play except in cases that are old, as is this one. [¶] Let me hear from you, Mr. Kaliban, on this matter.

"Mr. Kaliban [the prosecutor]: Well, I don't think it shifts the burden at all. It clearly states, [¶] 'The People have the burden of proving the truth of the [Penal Code section] 803[,] subdivision ([i]) allegations which may extend the normally applicable statute of limitations by preponderance of the evidence.' [¶] It simply is asking the jury to say if the three facts are true. If the defense feels they're prejudiced in any way by this, if somehow the jury is going to be prejudiced by this the defense can remove this from the consideration of the jury. They could admit the [Penal Code section] 803[, subdivision] (i) allegation. There really isn't any issue towards [section] 803[, subdivision] (i), it's simply jurisdictional. It's not something that's really at issue in the trial. I mean, if they somehow think it's prejudicing them to have the jury instructed on this, they don't have to have it. The jury does not need to be instructed. But some finding or some admission that it, [section] 803[, subdivision] (i), applies, needs to be made.

"Mr. Weinberg: I'm certainly not in the position of admitting anything. I think that speaks for itself. You know, this is a jurisdiction question. That question is not a matter for the jury's consideration, in my view. I believe that's what the prosecutor is arguing is this is a jurisdictional issue that they want this instruction to be given to the jury to make that determination."

Despite the lengthy discussion among the court and counsel regarding this instruction, no one addressed the fact the instruction refers to the filing of the felony complaint rather than the information.

The jury was instructed with the special instruction, quoted *ante*, that it must make factual findings as to whether the action was commenced within the statute of limitations. This was the only jury instruction on the statute of limitations. The jury made a true finding on the statute of limitations allegations.

D. *Analysis*

1. *In this case, the issue of the statute of limitations was a legal one for the trial court to decide.*

 Defendant argues the filing of a felony complaint does not commence a criminal action and does not toll the running of the statute of limitations. Defendant is correct. The filing of a criminal complaint does not commence the prosecution of a felony, and the statute of limitations continues to run until an information is filed. (*People v. Johnson* (2006) 145 Cal.App.4th 895, 900 [51 Cal.Rptr.3d 893]; *People v. Terry* (2005) 127 Cal.App.4th 750, 764 [26 Cal.Rptr.3d 71].)

Under the circumstances of this case, the time of commencement of the prosecution was not an issue that should have been presented to the jury for determination in the first place. Defendant's trial counsel was correct when he argued this was a legal issue for the court, not a factual issue for the jury. The trial court erred in placing the issue before the jury, and also erred by instructing the jury with the special instruction prepared by the prosecutor, which referred to the filing date of the felony complaint, rather than the information. We invited the parties to address this issue in supplemental letter briefs, which they did. We next examine the cases relied on by the parties in their arguments that the commencement of the prosecution was an issue for the jury.

In *Zamora, supra*, 18 Cal.3d 538, 542, on which defendant relies, the defendants were charged with two counts of grand theft. An earlier version of Penal Code section 800 established a three-year statute of limitations for grand theft, but tolled the running of the limitations period until the theft was discovered. (*Zamora, supra*, 18 Cal.3d at p. 561.) The defendants brought a nonstatutory motion to dismiss the grand theft counts, which were filed more than three years after the crimes were committed, because the prosecution had failed to plead facts showing reasonable diligence had been exercised to discover the thefts, and earlier discovery was not possible. (*Id.* at pp. 562–563.) Over the prosecution's objection, the trial court held an evidentiary hearing. (*Id.* at p. 563.) After the hearing, the trial court denied the defendants' motion, and the statute of limitations issue was again addressed at trial. (*Id.* at p. 564.) The jury convicted the defendants of grand theft, implicitly finding that the thefts could not have been discovered more than three years before the indictment was filed with the exercise of reasonable diligence. (*Id.* at p. 565.) The California Supreme Court, however, concluded there was not substantial evidence to support the jury's implied findings. (*Ibid.*)

The Supreme Court explained that the trial court has discretion to decide whether to hold an evidentiary hearing on the statute of limitations before trial. "We believe on balance that the federal rule is the preferable practice. We are aware of our past statements that the limitation issue is, upon proof of probable cause to believe that the statute is not a bar, a question for the trier of fact. But the limitation question is a basic jurisdictional issue and the bar thereof is aimed as much at the prevention of untimely prosecutions as it is at the prevention of untimely convictions. If it appears possible that the evidence will establish as a matter of law that the period of limitation has run, then judicial economy may be far better served if the issue is resolved at the earliest possible stage of the proceedings rather than waiting until an entire trial on multiple issues is completed. Moreover, the determination of the trial court after such a hearing will be similar to that on a motion for a directed verdict [citations] without the necessity of first litigating the merits of the case. We conclude therefore that a trial court has within its discretion the power to hold an evidentiary hearing for purposes of determining whether as a matter of law the statute of limitations bars the prosecution. At such a hearing, it may properly be considered whether the reasonable diligence requirement of [Penal Code former] section 800 has been complied with. We emphasize that there is no right to such a preliminary determination of the limitation issue. In each case the court should, before granting a hearing on the issue, consider such factors as the likelihood that the People will be unable to meet their burden of proof on the question (. . .) and the potential length of both the hearing and a full trial on the merits. *If the People prevail after such a hearing, then the limitation issue must still be resolved by the jury if it remains disputed by the defendant.*" (*Zamora, supra*, 18 Cal.3d at pp. 563–564, fn. 25, italics added.) Quoting only the italicized sentence, defendant here asserts the issue of compliance with the statute of limitations is *always* a jury question and cannot be decided by the court. However, as we shall explain, *Zamora* is consistent with our conclusion.

First, as *Zamora* expressly acknowledged, there are statute of limitations issues that are questions of law, not of fact. In this case, defendant argued before trial that the statute containing the applicable limitations period was unconstitutional on ex post facto grounds. The parties in this case agree that was a question of law. Similarly, the definition of the triggering event for the commencement of the prosecution (i.e., whether it is the filing of a felony complaint or an information) is a legal question, which is answered by the express words of Penal Code section 804. The question of when the criminal prosecution of defendant commenced was not raised or decided in the pretrial demurrer, and the ruling on the demurrer did not address, much less answer, it.

Second, *Zamora* differs from the present case in two important respects, both of which also support the conclusion that in this case the statute of

limitations issue was a legal one to be resolved by the trial court, not the jury. The indictment in *Zamora* on its face showed the prosecution was commenced after the limitations period had expired, without pleading sufficient facts to establish tolling. Here, by contrast, the information on its face shows that the prosecution against defendant was timely commenced under the statute of limitations in effect at the time the information was filed. Next, in *Zamora*, the pretrial motion raising the statute of limitations as an issue was an evidentiary motion challenging the reasonable diligence. in discovering a crime had been committed. Here, the pretrial motion was limited solely to the legal issue of the constitutionality of the statute of limitations.

Defendant also relied, at oral argument, on *People v. McGee* (1934) 1 Cal.2d 611, 613 [36 P.2d 378], in which the California Supreme Court first held the statute of limitations in a criminal case is jurisdictional, and an information or indictment showing on its face that the prosecution was not timely commenced cannot proceed. This case does not address whether the statute of limitations is always a question of fact for the jury.

2. *On appeal, under the circumstances of this case, we may consider the information even though it was not in evidence before the jury.*

In *Lewis, supra*, 180 Cal.App.3d at page 819, the defendant was charged with murder, but convicted of involuntary manslaughter. After the crime was committed, the defendant had lived outside California for more than four years; a warrant for his arrest had issued "promptly" after the crime. (*Id.* at p. 820.) The information had been filed more than three years after the crime was committed, and did not include any tolling allegations. (*Id.* at p. 821.)[4] The defendant did not raise the issue of the statute of limitations at trial. (*Lewis, supra*, 180 Cal.App.3d at p. 821.)

The appellate court held, "the failure to plead and prove facts showing timely commencement of the action was an error of jurisdictional proportions." (*Lewis, supra*, 180 Cal.App.3d at p. 821.) The court further held, however, that the error was not prejudicial and did not require a reversal of the defendant's conviction. (*Ibid.*) "[T]he issuance of a valid warrant for defendant's arrest shortly after the commission of the crime is an undisputed fact and the issuance of the arrest warrant tolled the limitations period as a matter of law. The existence of an event tolling the period being an undisputed fact, the error in failing to plead that event or to prove it to the jury is harmless." (*Ibid.*) Based on *Lewis*, the Attorney General urges us to take judicial notice of the undisputable fact of the date the information was filed.

---

[4] Although there is no statute of limitations for murder (Pen. Code, § 799), the statute of limitations for involuntary manslaughter is three years (*id.*, § 801).

*Lewis* was favorably cited in the California Supreme Court's opinion in *Williams, supra,* 21 Cal.4th 335. The court in *Williams* quoted *Lewis* with approval with respect to its holding that reversal or retrial is not required where the jurisdictional defects " ' "are as a matter of law cured on the undisputed record." ' " (*Williams, supra,* 21 Cal.4th at p. 345.) (*Lewis* itself quoted *Posten, supra,* 108 Cal.App.3d 633, 648–649, for that proposition; no statute has overruled *Lewis* or *Posten.*)

*Williams* was limited by the Supreme Court to the situation where the "charging document . . . , on its face, indicates the offense is time-barred." (*Williams, supra,* 21 Cal.4th at p. 344.) *Williams* did not consider a case where the charging document on its face indicates the prosecution was timely commenced, and specifically declined to address that or any similar situation: "This case presents no issue regarding the rules to apply when the defendant does assert the statute of limitations at trial. A variety of issues may arise in many different factual contexts. We leave these questions to future courts." (*Id.* at p. 345, fn. 3.)

The facts of *Lewis* are not directly on point here, but the present case is stronger in favor of affirming the judgment. In *Lewis, supra,* 180 Cal.App.3d at pages 819–820, the face of the charging document showed the prosecution was not timely commenced. The appellate court looked beyond the publicly filed charging document to the arrest warrant in analyzing whether the prosecution was commenced before the statute of limitations expired. (*Id.* at p. 821.) In this case, by contrast, the information shows on its face that the prosecution against defendant was timely commenced, there is no need to look beyond it, and no argument has been made in the trial court or on appeal to the contrary.[5]

■ Therefore, we hold that when a valid charging document shows on its face the prosecution was timely commenced, we may on appeal consider the charging document to determine whether substantial evidence supported the judgment, although that charging document was not in evidence before the jury.

---

[5] Defendant suggests in a supplemental letter brief, filed at our request, that the validity of the information is not undisputed. Defendant also contends that he cannot speculate how defendant's trial counsel might have attacked the validity of the information. In *Lewis, supra,* 180 Cal.App.3d at page 822, the court was able to determine the validity of the arrest warrant in question, which was included in the appellate record, and as to which the "defendant has not suggested any possible defects in it, though invited to do so." We invited defendant to comment on the validity of the information, and he did not do so except as referred to *ante.* Counsel has not identified any defect in the information. Also, counsel has not provided us with any authority, and we have found none in our independent research, prohibiting us from determining the validity of a document filed in the trial court record, and included in the appellate record, when no challenge to that document's validity has *ever* been raised.

In response to *Williams*, *Lewis*, and *Posten*, defendant relies primarily on *People v. Le* (2000) 82 Cal.App.4th 1352 [98 Cal.Rptr.2d 874] (*Le*). Although that case correctly states the general legal principles regarding how to determine if a criminal case has been commenced before the expiration of the applicable limitations period, it is inapposite factually. Further, the proposition for which defendant cites it—that reversal is required even if the facts regarding the commencement of the prosecution are undisputed—is dicta.

In *Le, supra*, 82 Cal.App.4th at page 1355, the defendants were charged with multiple counts of grand theft and insurance fraud. An indictment returned on October 28, 1993, alleged the crimes were committed between May 1, 1987, and February 15, 1990. (*Ibid.*) The indictment also alleged the prosecution was commenced by the issuance of arrest warrants under a separate case number on June 12, 1992. (*Ibid.*) After the defendants moved for acquittal based on the failure to prove the statute of limitations had not run, the prosecution introduced the arrest warrants into evidence. (*Id.* at p. 1356.) The prosecution also offered the testimony of the police officer who obtained the warrants. He testified (1) the facts stated in his affidavit for issuance of the warrants covered the same subject matter being litigated at trial; (2) the case for which he had obtained the warrants had been dismissed before a preliminary hearing was held; and (3) the case at trial had a different case number than the case in which he had obtained the arrest warrants. (*Ibid.*) The defendants were convicted of some, but not all, of the charges against them. (*Ibid.*)

The parties agreed a three-year statute of limitations applied, and the indictment was not issued within the limitations period. (*Le, supra*, 82 Cal.App.4th at p. 1356.) The appellate court concluded the prosecution had failed to prove the case had been commenced before the expiration of the statute of limitations. (*Id.* at pp. 1357–1358.) "The prosecution presented sufficient evidence to show the prior prosecution commenced before the statute of limitations had run. It presented *no* evidence, however, to show how long the statute was tolled by that prosecution. The prosecution had its chance but failed to show the statute of limitations had not run by the time the indictment issued." (*Id.* at p. 1361.) We agree with the disposition reached by the appellate court in *Le* because the facts relating to the commencement of the prosecution in that case were disputed. Two different criminal cases had been initiated alleging the same criminal conduct, and no evidence was presented establishing the length of the tolling period before the prosecution of the latter case was commenced. In reaching its conclusion, the *Le* court correctly cited the general principles of law applicable to cases involving disputes regarding the statute of limitations.

The *Le* court, however, went further and reached an unnecessary issue, stating, "even if the tolling period were undisputed, the prosecution would

not be entitled to an affirmance." (*Le, supra*, 82 Cal.App.4th at p. 1360.) This statement is dicta because the tolling period was not undisputed in that case. Indeed, that issue appears never to have actually been raised by the parties. The court acknowledged the Attorney General had not argued that an error in pleading or proof regarding the statute of limitations could be cured by the undisputed facts in the appellate record; the court itself raised the issue and considered the argument to "give him the benefit of the doubt." (*Id.* at p. 1359 & fn. 13.)

It is significant that, in this case, defendant never argued that even if Penal Code section 803 applied to extend the limitations period, the prosecution was not timely commenced.[6] Defendant's argument in the pretrial demurrer was only that the enactment of Penal Code former section 803 constituted an unconstitutional ex post facto violation. As distinguished from the myriad of cases in which the appellate court found the charging document on its face showed the statute of limitations had expired before the prosecution was commenced, in this case the opposite is true—the information shows on its face the prosecution was timely commenced. *Le* is factually and legally inapposite, and to the extent its dictum is inconsistent with our conclusions here, we respectfully disagree with it.

E. *Count 3 of the Information*

Even if reversal were required on counts 1 and 2 because prosecution of those counts was not commenced before the expiration of the statute of limitations, count 3 was timely filed.[7] Because defendant faced life imprisonment on count 3, there was no statute of limitations for commencing the prosecution. (Cal. Law Revision Com. com., 50 pt. 1 West's Ann. Pen. Code (2008 ed.) foll. § 799, p. 247 ["Section 799 replaces former Section 799 with the rule that there is no limitation period for capital crimes or for crimes punishable by life imprisonment (with or without the possibility of parole)."].) The jury in this case convicted defendant on count 3, and sentence was imposed but stayed. If defendant were correct that the convictions on counts 1 and 2 must be reversed due to the lack of substantial evidence regarding the statute of limitations, we would remand the matter for resentencing on count 3.

---

[6] At our invitation, the parties submitted supplemental letter briefs addressing the legal significance, on appeal, of the limited nature of defendant's statute of limitations argument in the trial court.

[7] The parties were invited to and did submit supplemental letter briefs discussing the legal significance of defendant's conviction on count 3. Defendant's supplemental letter brief concedes that the charge of kidnapping to commit rape was not subject to any statute of limitations, and that defendant was convicted of this charge. Defendant's supplemental letter brief also specifies that he is requesting his convictions on counts 1 and 2 be reversed.

## II.

### VOIR DIRE

Defendant also argues his conviction must be reversed because he was denied due process as a result of the prosecutor's misconduct during voir dire. Defendant identifies several statements made by the prosecutor during voir dire which defendant claims (1) were intended to ingratiate the prosecutor with the venire and arouse the passions and prejudices of the prospective jurors; (2) constituted improper vouching for the strength of the prosecution's case and of the prosecution's witnesses; and (3) directed the jury to promptly find defendant guilty. The Attorney General argues some of the prosecutor's statements were proper, defendant failed to object to others, and the trial court's admonition to the jury venire was sufficient to prevent any improper statements from affecting the jury.

### A. The Prosecutor's Improper Use of Voir Dire

The prosecutor made several improper statements during voir dire, as well as several statements that were proper in and of themselves, but which, when combined with other statements, became improper. First, the prosecutor advised the jury he handled only rape and child molestation cases, and had done so for three years. The prosecutor also stated he had "many times as a prosecutor cried as I am talking to people on the stand because it's so emotional, but it doesn't make me unable to do my job."

The prosecutor also discussed a previous case on which he had worked. "I had a case a few years ago where three teenage girls were killed in Huntington Beach and [it was a] very emotional case. It was about a three week long trial, very strong evidence against the defendant. At the end of the trial the jury went out and the families were there every single day, the families of [the] three girls and they sat there. The jury didn't come back the first day and the families started getting very upset and crying, you know. They would [ask] me what is wrong, why, how come they didn't make a decision. I don't know. Next day came back same thing, the families are all upset—[¶] . . . [¶] . . . The jurors came back and we asked them why—what took so long. Oh, we knew he was guilty the first day, but we wanted to figure out this one other issue. . . . [¶] . . . [¶] . . . My question is would any of—if you had other questions but they didn't go to the elements, the actual like 1, 2, 3 elements, if you were convinced beyond a reasonable doubt of the elements, even though you might have some question very interesting, but didn't go to that element[,] would you be able to convict?"

In response to the prosecutor's final question, one juror responded, "[i]f he is already—as jurors we all decided that he was guilty, that is all I really

need. I don't need to ask questions out of the scope of something else. That would bother me." The prosecutor then stated, "I think you're on the same page as me."

B. *Defendant's Motion to Dismiss the Jury Panel*

Defendant moved for a new jury panel.

"Mr. Weinberg [defendant's counsel]: I am making a motion for a new ven[ir]e. Mr. Kaliban [the prosecutor] told, I believe, three separate stories about three other serious crimes that he handled. Two of those stories involved a guilty verdict. The first story this morning was—well, let me move to the ones that just occurred recently. They dealt with three girls getting killed. There was another explanation about another trial and discussion with a juror about the deliberations and them being found guilty and all in the service of trying to get to the point of, well, they had some collateral issue question.

"I think that that impacts on this panel's mind. They now know Mr. Kaliban only tries serious sex crimes. You told them that this morning. He told them that he believed very much in the guilt of one of the defendants in one of these other trials, which would suggest to the trier of fact or potential trier of fact that Mr. Kaliban wouldn't bring a case unless he thought it had merit and therefore trust me on this one, folks, you know, impliedly.

"And I think that the panel that's here with us in court today is being led—misled for whatever reason into believing that the People have an open and shut case against Mr. Castillo. You know, Mr. Kaliban may in fact believe that. I wouldn't hold that against him. But for purposes of picking a jury I do not think any of that is relevant. I think it prejudices their minds with—about the facts that they're about to hear and witnesses they're about to see testify.

"The Court: Do you wish to be heard?

"Mr. Kaliban: Sure. I never vouched for that I thought somebody was guilty. I said I had strong evidence in one case. I didn't talk about the facts of any other cases. I mentioned another case only that it took a long time in relation to how I am not going to talk a lot and be quick in my examination of witnesses. And all I am doing is bringing up a point which goes for cause, are you going to look at the elements of a case or are you going to look beyond that. And ever since that trial I have asked this question of every single jury I voir dire in every single trial because it has happened before. That wasn't the first time it had ever happened.

"But jurors sometimes get confused by some of the issues that are brought up, the collateral issues by the defendants that don't go to the elements. I want to know from jurors whether or not they can concentrate only on the elements. That is all [the] People have to prove. The defense may bring up all kinds of other things they frequently do in trial.

"The Court: I invited you to ask that question more than once and to get away from personalizing your speech to the jury about your personal experiences in other cases. I frankly, Mr. Kaliban, am really quite stunned by the way that you have been conducting your voir dire of this jury. It was not my experience of you that you would stand up before a jury and make speeches about your personal experiences in other cases or personalize your involvement in this case in such a way as to shine the spotlight on you rather than to conduct a legitimate inquiry for cause.

"That is my perception. I know that you disagree with my perception because we spoke informally off the record the last time I wanted [a] sidebar with respect to challenges for cause, and I suggested to you a negative perception and you seemed surprised by that. But my perception is certainly that you have made a number of speeches to this panel all about you, Mr. Kaliban, and what your experiences in trial have been.

"My concern about this last inquiry is that you discussed with this jury matters concerning deliberations that were disclosed to you by other jurors following a trial. The jury room is a sacred place. We do not discuss what happened in deliberations in the jury room unless there is an issue that has to be resolved by the court. And I do find it disturbing.

"I believe your objection is that the inquiry did not go to cause and that the speeches have placed in the jurors' minds some matter about which they should not be concerned. I am wondering if you're alleging prosecutorial misconduct.

"Mr. Weinberg: I had—I hadn't labeled my argument officially. In other words, that was one other thing I wanted to address. I do think that there is misconduct, but I do think there is improper vouching. And the point I didn't make before, because I couldn't find the words for it, let me just get to it, let me just spell it out, when that juror in that other case told Mr. Kaliban we knew he was guilty, in essence that was a ratification of Mr. Kaliban's judgment as a prosecutor in bringing forward such a case. And since the jury knows that Mr. Kaliban tries only these kinds of cases, they would be inclined to say, well, this guy really knows his stuff. He's been in this unit for three years. Prosecutor for ten. Okay. Let's go through the formality of the trial, but we're ready. That is—that is a potential outcome. I am not saying that that is or is not, but it is a potential outcome.

"The Court: What did you mean when you said 'vouching'?

"Mr. Weinberg: I mean—I mean in a manner of speaking. In other words, by bootstrapping another case and another verdict and another opinion from another juror you could characterize it that way.

"The Court: All right. You know, we're dealing with this issue as it has arisen and, of course, I have 75 time qualified jurors or the remainder thereof waiting in the courtroom for us. And so the question is is it an appropriate remedy to strike the panel and start again.

"Frankly, Mr. Weinberg, the only way that I would consider that a proper remedy is if I could find prosecutorial misconduct. I think, of course, that is the remedy when you have a valid [*People v.*] *Wheeler* [(1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]] motion. So I am looking for in my own mind authority that would suggest that under these circumstances it would be proper to strike the panel, and I can't come up with any.

"The best I can do at this point is go out there and admonish the jury, and I am willing to do that, and then I would like to proceed with jury selection. . . .

". . . I am surprised at [Mr. Kaliban's] representation that discussing jury deliberation with a new panel of jurors is perfectly acceptable in other courts, but I doubt very much there is some legal authority to suggest that that is the case. In this court, however, it is not acceptable. In this court, however, we inquire of the jurors for cause. And I think if someone exam[ine]s the record from today they're going to see that maybe your questions and answers took one-tenth of the time that you have been given by the court for the voir dire.

"So I would encourage you to cease and desist this line. I do intend to tell the jurors that they're not to consider it and I would ask you to move on." (Italics added.)

### C. *The Trial Court's Admonition to the Jury Panel*

Before voir dire continued, the trial court admonished the jury panel as follows:

". . . Ladies and gentlemen, Mr. Kaliban did ask a series of questions that revealed to you information about other cases and also suggested something that was disclosed to him by a juror who participated in deliberations about the deliberation process. Although I do not think he intended to convey any thoughts or suggest to you how you should deliberate, out of an abundance of

caution I am telling you now to disregard any statements that Mr. Kaliban has made in his voir dire where he has identified other cases or other information conveyed to him about those cases.

"I think he was trying to preamble a question with that information, but we would not suggest to you and we do not wish you to consider how you should deliberate on any particular case or what needs to be reviewed in the course of deliberations, nor did we intend to suggest to you, and I am sure Mr. Kaliban will concur, that you should have any extra confidence in this particular case on the basis of experiences he had in the past and his ability to secure guilty verdicts in other matters.

"So to the extent that there might have been a thought implanted, I want to take this opportunity to advise you that it is my order that you disregard such a thought and just let it go. Hopefully you all understand me. Anyone who doesn't? Good. No hands."

The prosecutor did not return to the challenged questioning and commentary during voir dire.

### D. *Defendant's Counsel's Renewed Motion to Dismiss the Jury Panel*

Before the jury was impaneled, defendant's counsel revisited the issue of dismissing the jury panel, and cited the trial court to *People v. Alvarado* (2006) 141 Cal.App.4th 1577 [47 Cal.Rptr.3d 289]. Defendant's counsel argued the prosecutor had committed prosecutorial misconduct by improperly vouching for the case against defendant.

"Mr. Kaliban referred to previous verdicts, he referred to a conversation with a juror in that case where in the juror told him we knew he was guilty right away or words to that effect. [¶] . . . [¶] . . . But we got stuck on a collateral issue. He impliedly suggested that I believe that jury came back fast, they knew he was guilty, so don't get bogged down . . . in details. I am bringing it, I got three years on this particular assignment, I am a ten year attorney, I have been emotionally involved in other cases that I felt deeply for the victims, and so my point is that it's not one single thing, but it's the collection of those things that send a message to the jury that his word is to be trusted, he is an expert, he only does these type[s] of cases, therefore he must know what he is doing and wouldn't bring a bad case. Jurors have ratified his judgment in prior cases and they have done it quickly. And the only reason that they haven't done it quickly in the past is because they got bogged down in details. I think that is a reasonable interpretation this panel could have achieved in hearing what Mr. Kaliban was saying this morning."

Defendant's counsel argued that an admonishment was not sufficient to cure the prosecutor's violation of defendant's due process rights, and renewed his request that the trial court dismiss the jury panel.

The prosecutor denied having said anything improper, and denied making any comments that could be construed as vouching for the strength of the evidence in this case. He explained his reference to an earlier case as follows: "[T]he time I talked about my experience it was in a negative connotation saying, you know what, people don't like to hear my kind of cases because it's kind of gross." The prosecutor also discounted defendant's concerns about the references to the deliberations of a previous jury: "I never suggested to them that jurors should go quickly or not. All I said to them was look at the elements of the case and judge those beyond a reasonable doubt. If there are extraneous problems are you going to get hung up on those or focus on the elements. That is totally proper. There is nothing improper about asking a jury to do that. I have never told them—suggested in any way they should go quickly in this case. I never will suggest how the deliberations should go."

The trial court ultimately agreed with defendant's counsel that the prosecutor's statements during voir dire had been improper, but denied the motion to dismiss the jury panel because it believed the admonition given to the jury was sufficient to cure the problem. "I do think that Mr. Kaliban's efforts to educate the jury about other cases in which he participated was improper, but I also have confidence that the admonition I gave was given in a timely fashion and will be followed by the trial jurors. I have every confidence that this panel will decide this case based solely on the evidence they hear in this courtroom and not based on anything that Mr. Kaliban may have said in voir dire. [¶] And for that reason I am denying your motion to strike the panel and begin jury selection anew."

E. *Analysis*

■ "In a criminal case, the court shall conduct an initial examination of prospective jurors. . . . Upon completion of the court's initial examination, counsel for each party shall have the right to examine, by oral and direct questioning, any or all of the prospective jurors. . . . [¶] The trial court's exercise of its discretion in the manner in which voir dire is conducted . . . shall not cause any conviction to be reversed unless the exercise of that discretion has resulted in a miscarriage of justice, as specified in Section 13 of Article VI of the California Constitution." (Code Civ. Proc., § 223.) We consider whether there is a reasonable likelihood the jury construed or applied any of the prosecutor's improper remarks in an objectionable fashion. (*People v. Ayala* (2000) 23 Cal.4th 225, 284 [96 Cal.Rptr.2d 682, 1 P.3d 3].)

The prosecutor's comments, as a whole, appear to us to be an attempt to precondition the jurors to return a guilty verdict, and improperly referred to evidence outside the record, namely, the experiences of the prosecutor and of the victims' families in other cases on which the prosecutor had worked. This constitutes prosecutorial misconduct. (*People v. Frye* (1998) 18 Cal.4th 894, 971 [77 Cal.Rptr.2d 25, 959 P.2d 183]; *People v. Mayfield* (1997) 14 Cal.4th 668, 781–782 [60 Cal.Rptr.2d 1, 928 P.2d 485]; *People v. Anderson* (1990) 52 Cal.3d 453, 479 [276 Cal.Rptr. 356, 801 P.2d 1107]; *People v. Alvarado, supra*, 141 Cal.App.4th at p. 1584; *People v. Boyd* (1990) 222 Cal.App.3d 541, 571 [271 Cal.Rptr. 738].)

■ Reversal, however, is not automatic. "If the assignment is made, and the trial judge promptly and fully instructs the jury to disregard the improper statement, the error will ordinarily be deemed *cured*. [Citations.]" (7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 225, p. 258.) In this case, the trial court promptly and correctly admonished the jury to disregard the prosecutor's comments. (Cal. Stds. Jud. Admin., § 4.30(c) ["When any counsel examines the prospective jurors, the trial judge should not permit counsel to attempt to precondition the prospective jurors to a particular result or allow counsel to comment on the personal lives and families of the parties or their attorneys."].) There is nothing in the record supporting an argument that the prosecutor's comments were so outrageous, or so completely infected the jurors' minds that the admonition could not remedy the problem.[8]

In any event, the misconduct was not prejudicial. Reversal of a judgment of conviction based on prosecutorial misconduct is called for only when, after reviewing the totality of the evidence, we can determine it is reasonably probable that a result more favorable to a defendant would have occurred absent the misconduct. (*People v. Bell* (1989) 49 Cal.3d 502, 534 [262 Cal.Rptr. 1, 778 P.2d 129]; *People v. Beivelman* (1968) 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)[9] The evidence of defendant's guilt was overwhelming. Defendant's DNA was an exact match with the DNA obtained during L.'s

[8] At oral argument, defendant's counsel emphasized the effect the prosecutor's statements had on the jury, by focusing on the interchange between the prosecutor and one juror during voir dire. However, that exchange occurred before the trial court admonished the jury.

[9] The *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] standard of harmless error does not apply because the prosecutor's misconduct did not render the trial fundamentally unfair. "Defendant contends that the error is of federal constitutional dimension and cannot be deemed 'harmless beyond a reasonable doubt' under *Chapman v. California*[, *supra*,] 386 U.S. 18, 24 . . . . 'Prosecutorial comment is reversible as misconduct under the federal Constitution when it " 'so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process' " '; improper comment that 'falls short of rendering the trial fundamentally unfair' is error under state law. [Citation.] '[I]n cases where jurors are improperly exposed to certain factual matters, the error is usually tested under the standard set out in *People v. Watson*[, *supra*,] 46 Cal.2d 818, 836 . . .' [citation], and this case

examination after the attack. The prosecution's expert testified the chances of another person having provided the DNA found on L. were one in one trillion. Both D. and N. identified defendant as the person who attacked them; those attacks were factually similar to the attack on L. Testing also concluded defendant's DNA matched the DNA of N.'s attacker.

### DISPOSITION

The judgment is affirmed.

Rylaarsdam, Acting P. J, and Aronson, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 25, 2009, S169437.

---

is no exception. The single improper statement in this case did not render the trial fundamentally unfair and did not constitute federal constitutional error." (*People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1323–1324 [77 Cal.Rptr.3d 14].)